John H. GLESSNER; Tito Delgozzo; Claudia Capritti; Robert Slimm; Charles Heck; and Wendy Heck, Appellants,

v.

William KENNY, Jr.; Stanley R. Orczyk; Paul A. Vermylen, Jr.; Meenan Oil Co., Inc.; Blueray Systems, Inc.; and KOV Corporation.

No. 90–5885.

United States Court of Appeals, Third Circuit.

Argued April 8, 1991.

Decided Dec. 23, 1991.

Neils Korup (argued), Paul R. Rosen, Spector Gadon & Rosen, P.C.; Sherrie R. Savett, Robert P. Frutkin, and Karen S. Orman, Berger & Montague, P.C., Philadelphia, Pa., for appellants.

Bruce W. Ficken (argued) and David Castro, Pepper, Hamilton & Scheetz, Philadelphia, Pa., for appellees.

Before: SLOVITER, Chief Judge, COWEN, and WISDOM *, Circuit Judges.

* Hon. John Minor Wisdom, Senior Circuit Judge of the United States Court of Appeals for the Fifth Circuit, sitting by designation.

OPINION OF THE COURT

SLOVITER, Chief Judge.

We are once again required to analyze the applicability of RICO to a claim that ordinarily would have been framed in terms of a common law action for misrepresentation or fraud. The district court dismissed the complaint as to some plaintiffs as barred by the statute of limitations and as to the remaining plaintiffs for failure to state valid RICO claims, and plaintiffs appeal.

## I.

### Facts and Procedural History

Plaintiffs John Glessner, Tito Delgozzo, Claudia Capritti, Robert Slimm, Charles Heck and Wendy Heck purchased allegedly defective residential oil furnaces manufactured and sold by defendant Blueray Systems, Inc., a wholly owned subsidiary of defendant Meenan Oil Co., Inc. In 1983, Meenan was purchased by defendant KOV Corporation. Defendants William Kenny, Stanley Orczyk and Paul Vermylen were officers of Meenan and are now principals of KOV.

Blueray sold a line of "blue flame" oil furnaces and boilers throughout the United States and Canada for use primarily as residential home heating systems. Plaintiffs made their purchases between 1975 and 1984. According to plaintiffs' complaint, the "blue flame" units were advertised as "state of the art residential heating system[s]" that were highly efficient and would result in considerable savings in home oil heating costs. Plaintiffs allege that because of an inherent defect, the "blue flame" units were inefficient and unsafe, and required unprecedented service to prevent carbon monoxide poisoning.

Plaintiffs filed suit on June 2, 1988 in the District Court for the District of New Jersey on behalf of themselves and others who had purchased the "blue flame" units alleging various state law claims and the violation of the Racketeer Influenced and Corrupt Organizations Act (RICO) 18 U.S.C. §§ 1961–68 (1988). They claim that they were injured by defendants' misrepresentations regarding the efficiency and safety of the furnaces.

Any person injured in his or her business or property by a RICO violation may bring a civil suit to recover treble damages. 18 U.S.C. § 1964(c) (1988). Plaintiffs' complaint alleges three RICO violations: 1) that defendants used or invested money derived from racketeering activity to acquire an interest in an enterprise engaged in interstate commerce in violation of 18 U.S.C. § 1962(a)[1]; 2) that defendants conducted the affairs of an enterprise through a pattern of racketeering activity in violation of section 1962(c)[2]; and 3) that defendants conspired to violate sections 1962(a) and 1962(c), in violation of section 1962(d). The complaint alleges that defendants used the mails to transmit advertisements, warranties and other written materials containing misrepresentations and omissions about the "blue flame" units in violation of the Mail Fraud Act, 18 U.S.C. § 1341 (1988).

Defendants moved for dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that plaintiffs' complaint failed to state valid RICO claims and was barred by the statute of limitations. Relying on deposition testimony, the district court dismissed the RICO claims of plaintiff Glessner and plaintiffs Wendy and Charles Heck as time barred. The RICO claims of the other plaintiffs were dismissed on the grounds that: 1) plaintiffs had not alleged an injury arising from the

---

**1.** Section 1962(a) provides, in relevant part,

It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity ... to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in ... interstate or foreign commerce.

**2.** Section 1962(c) provides, "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in ... interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity...."

investment of racketeering proceeds as required by 18 U.S.C. § 1962(a); 2) plaintiffs had not alleged an "enterprise" separate from the "persons" involved as required by 18 U.S.C. § 1962(c); and 3) the allegations of conspiracy were insufficient because there can be no conspiracy between a corporate entity and its employees, and, in the alternative, the complaint failed to plead the conspiracy claim adequately. The district court then dismissed the state law claims without prejudice.

Plaintiffs filed a timely appeal. We have jurisdiction under 28 U.S.C. § 1291.

## II.

### Statute of Limitations

We consider first the contention of plaintiffs Glessner and Charles and Wendy Heck that the district court erred as a matter of law in determining that their RICO claims were time barred.

■ The appropriate statute of limitations for civil RICO actions is four years. See Agency Holding Corp. v. Malley–Duff & Assocs., 483 U.S. 143, 156, 107 S.Ct. 2759, 2767, 97 L.Ed.2d 121 (1987). Because the complaint was filed on June 2, 1988, the district court determined that any claims accruing prior to June 2, 1984 would be barred. The court found that these plaintiffs were aware of all of the elements of their RICO claims prior to that date, and therefore dismissed the complaint of these plaintiffs as time barred.

This court enunciated the standard for assessing accrual of a civil RICO cause of action in Keystone Insurance Co. v. Houghton, 863 F.2d 1125 (3d Cir.1988). We noted the difficulty in applying the usual rules for accrual of actions to private civil RICO claims because of RICO's requirement that plaintiff show injury to its business or property as a result of a pattern of racketeering activity. We stated that the "last injury discovery rule," under which a claim arises when a plaintiff knows or should have known of his or her injury, cannot be applied to a RICO plaintiff whose knowledge of injury arises solely from a single predicate act because the plaintiff may have discovered the injury but not the pattern. Id. at 1129. Instead, a plaintiff's limitations period must be measured from the time it knew or should have known of the pattern of racketeering activity.[3]

We articulated the rule for accrual of a civil RICO action as follows:

> [T]he limitations period for a civil RICO claim runs from the date the plaintiff knew or should have known that the elements of the civil RICO cause of action existed unless, as a part of the same pattern of racketeering activity, there is further injury to the plaintiff or further predicate acts occur, in which case the accrual period shall run from the time when the plaintiff knew or should have known of the last injury or the last predicate act which is part of the same pattern of racketeering activity.

Id. at 1130.

Applying the Keystone rule to this case, the district court found that plaintiffs Glessner and Charles and Wendy Heck knew or should have known of the RICO elements of their claim prior to June 2, 1984. In reaching this conclusion, the court relied on plaintiffs' admissions on deposition that they began experiencing

---

**3.** In Keystone we also acknowledged that what we denominated as the "simple discovery rule, which creates a separate accrual period for each injury," had been adopted by five circuits, 863 F.2d at 1133, citing Bankers Trust Co. v. Rhoades, 859 F.2d 1096 (2d Cir.1988), cert. denied, 490 U.S. 1007, 109 S.Ct. 1642, 104 L.Ed.2d 158 (1989); Compton v. Ide, 732 F.2d 1429 (9th Cir.1984); Alexander v. Perkin Elmer Corp., 729 F.2d 576 (8th Cir.1984) (per curiam); Bowling v. Founders Title Co., 773 F.2d 1175, 1178 (11th Cir.1985), cert. denied, 475 U.S. 1109, 106 S.Ct. 1516, 89 L.Ed.2d 915 (1986); Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp., 828 F.2d 211 (4th Cir.1987). We declined to follow that rule where there is a gap between the predicate act that injured plaintiff and the predicate act necessary to create the pattern. Keystone, 863 F.2d at 1133. We note that although there are instances in which both the "last injury discovery rule" and the "simple discovery rule" will converge, they differ in that the limitations period is more expansive under the "last injury discovery rule," as represented by the opinion in Bankers Trust.

problems with their "blue flame" units which required servicing prior to 1984.[4] Thus Glessner, who purchased his Blueray unit in 1977, knew in the early 1970's of both the carbon monoxide emissions and the need for "extraordinary amounts of servicing" because he worked for the defendant Meenan, and further knew his own unit began pulsating within three years of its 1977 installation. The Hecks purchased their unit in 1982 and had problems with the unit immediately after installation through the winter of 1983. Although the plaintiffs continued to experience difficulties with their furnaces after 1984, and in that period the Consumer Products Safety Council warned that carbon monoxide poisoning could result from improper servicing of Blueray units, the district court held that this did not constitute the type of "further injury to the plaintiff" that *Keystone* stated would serve to reset the limitations clock.

In *Keystone*, the plaintiff alleged an ongoing pattern of racketeering activity which continued at least until September, 1983 when an act of mail fraud was committed for which the defendants were convicted. Therefore we held that the complaint filed in July, 1986 was timely under the last predicate act accrual rule. Plaintiffs do not claim that there was any predicate act of the defendants after June 2, 1984 from which the statute of limitations could be counted. The complaint itself alleges that defendants ceased manufacturing the Blueray "blue flame" furnaces and boilers sometime in 1983.

Plaintiffs instead focus on the "further injury" language of *Keystone*. Plaintiffs argue that although they realized that their "blue flame" units needed extensive servicing prior to June, 1984, their RICO actions are timely because they replaced their units after June, 1984, within the limitations period. According to plaintiffs, replacing the unit was a "further injury" for purposes of *Keystone*, thus resetting the limitations clock.

■ We did not have occasion in *Keystone* to explain what kind of "further injury" was contemplated when we stated that the limitations period would accrue from "further injury" as well as "further predicate acts." In making its determination, the district court first looked to the injury alleged, which it characterized as the need for extensive maintenance because plaintiffs purchased an allegedly fraudulently advertised defective product. The court held that because this injury was admittedly known to these plaintiffs before June 2, 1984, the fact that they replaced the units thereafter was not a new injury, but a recharacterization of the same injury.

Support for the district court's approach to injury can be found in both *Bivens Gardens Office Building v. Barnett Bank*, 906 F.2d 1546, 1555 (11th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1695, 114 L.Ed.2d 89 (1991), and *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096 (2d Cir.1988), *cert. denied*, 490 U.S. 1007, 109 S.Ct. 1642, 104 L.Ed.2d 158 (1989). Although these courts diverge somewhat in their approach, both opinions recognize that there can be separate accrual of the statute of limitations from new injuries, but both expressly confine such separate accrual to "new and independent injuries."[5] We find the opin-

---

**4.** It appears that in referring to the depositions, the district court applied the procedure of Rule 12(b)(6) which permits the court to treat the motion as one for summary judgment when using matters outside the pleadings. We cannot, however, find any record indication that the court followed the Rule's requirement that in so acting it must give all parties "reasonable opportunity to present all material made pertinent to such a motion by Rule 56." We have held that the failure to give such notice is reversible error. *See Rose v. Bartle*, 871 F.2d 331, 342 (3d Cir.1989); *see also Castle v. Cohen*, 840 F.2d 173, 179–80 (3d Cir.1988). However, plaintiffs have not complained in their appellate

briefs about the procedure used, and thus that issue is waived. *See Winston v. Children & Youth Servs. of Delaware County*, 948 F.2d 1380, 1385 (3d Cir.1991).

**5.** In *Bankers Trust*, the court said:

Even after injury has occurred, however, and a civil RICO claim has accrued, there will frequently be *additional, independent* injuries that will result from the same violation of § 1962, but which, because they will not occur until some point in the future, are not yet actionable as injuries to plaintiff's business or property. Multiple injuries, spread over time,

ion in *Bivens Gardens* in this respect persuasive. It adopts the *Keystone* rule, but explains "that with respect to each *independent* injury to the plaintiff, a civil RICO cause of action begins to accrue as soon as the plaintiff discovers, or reasonably should have discovered, both the existence and source of his injury and that the injury is part of a pattern." 906 F.2d at 1554–55 (emphasis added).

The facts in both of those cases illustrate the kinds of injuries that are new and independent. In *Bankers Trust,* there were three separate incidents of injury arising from (1) common law fraud and bankruptcy fraud in 1974–1976; (2) frivolous lawsuits and bribery in 1978–1979, and; (3) fraudulent conveyances in 1981–1982. *See Bivens Gardens,* 906 F.2d at 1552 (discussing *Bankers Trust* ). In *Bivens Gardens,* the court considered as separate and independent injuries those resulting from the defendants' wrongful takeover of plaintiff's hotel in 1975; defendants' mismanagement and diversion of assets between 1975 and 1981; and defendants' wrongful sale of the hotel in 1981. The court held that the claim with respect to the injuries from the 1975 takeover was barred because the suit was not filed until 1983, even though the pattern of racketeering was alleged to have continued until 1981. *Id.* at 1156.

▮ We must therefore ascertain whether the replacement of the units in this case constituted a separate and independent injury from that known by these plaintiffs before June, 1984. We agree with the district court that it did not, and that "further injury" under *Keystone* means a new and distinct injury from the initial injury. For example, if Glessner's only injury was limited to servicing his "blue flame" unit, the fact that he continued to service his unit after June, 1984 could not be considered a "further injury" sufficient to revive the RICO cause of action. We do not regard the need ultimately to replace the unit to be

a "separate" or "independent" type of injury within the meaning of either *Bankers Trust* or *Bivens Gardens.* While the cost of replacement of the unit may be an element of damage, the mere continuation of damages into a later period will not serve to extend the statute of limitations. It follows that the district court did not err in concluding that the actions by Glessner and the Hecks were time barred.

### III.

### *The Section 1962(a) Claim*

We consider next the propriety of the district court's dismissal of the RICO claims of the remaining plaintiffs as to whom no limitations defense was raised. Plaintiffs contend that the district court erred in dismissing their section 1962(a) claim. They make two arguments: first, that this court's interpretation of section 1962(a) as limited to investment injury is inconsistent with Supreme Court precedent; and second, that even if this court's investment injury rule is valid, they have alleged injury resulting from the investment of racketeering income.

Section 1962(a) prohibits "any person who has received any income derived ... from a pattern of racketeering activity ... to use or invest ... such income ... in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in ... interstate or foreign commerce." 18 U.S.C. § 1962(a) (1988). This court has held that under this section, a plaintiff must allege injury resulting from the investment of racketeering income (investment injury) as distinct from injury from the predicate acts themselves. *See Rose v. Bartle,* 871 F.2d 331, 357–58 (3d Cir.1989) ("requiring the allegation of ... investment injury is consistent with both the literal language and fair import of the language [of section 1962(a) ].") (internal quotation omitted); *see also*

frequently result from the very nature of a RICO violation.
... At a later date, *when a new and independent* injury is incurred from the same violation, the plaintiff is again "injured in his business or property" and his right to sue for

damages from that injury accrues at the time he discovered or should have discovered that injury.
859 F.2d at 1103 (citation omitted; emphasis added).

*Banks v. Wolk*, 918 F.2d 418, 421 (3d Cir. 1990) (citing *Rose*).

Plaintiffs argue that this investment injury requirement is inconsistent with *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). In *Sedima*, the Supreme Court rejected the Second Circuit's view that a plaintiff bringing an action under section 1964(c) (the provision for a private cause of action) must allege "racketeering injury," defined as injury caused by activity which RICO was designed to deter. *Id.* at 494, 105 S.Ct. at 3283. The Supreme Court held that where the elements of a RICO violation are present, the only injury necessary to confer standing on a plaintiff is injury flowing from the predicate acts. *Id.* at 495, 105 S.Ct. at 3284.

Plaintiffs read *Sedima* as establishing the proposition that injury resulting from predicate acts constitutes a violation of sections 1962(a) through (c). Plaintiffs have failed to appreciate the distinction in language and scope between section *1962(a)* and section *1962(c)*. *Sedima* involved a 1962(c) claim; the Court did not address the requisite elements of a section 1962(a) claim. Additionally, the Court's general discussion of standing under section 1964(c) presupposed valid claims under sections 1962(a)–(c). *Id.* (*"[i]f* the defendant engages in a pattern of racketeering activity in a manner forbidden by [sections 1962(a)–(c)]" then injury resulting from predicate acts is sufficient to confer standing under 1964(c) (emphasis added)).

■ We are bound by our court's prior construction of section 1962(a), *see* Third Circuit Internal Operating Procedure 9.1, which we reiterate is compelled by the language of the statute, and which has also been adopted by other circuits. *See, e.g., Danielsen v. Burnside–Ott Aviation Training Center, Inc.*, 941 F.2d 1220, 1229–30 (D.C.Cir.1991); *Ouaknine v. MacFarlane*, 897 F.2d 75, 83 (2d Cir.1990); *Grider v. Texas Oil & Gas Corp.*, 868 F.2d 1147, 1149–51 (10th Cir.), *cert. denied*, 493 U.S. 820, 110 S.Ct. 76, 107 L.Ed.2d 43 (1989). The district court correctly held

investment injury must be pled to state a claim under section 1962(a).

■ Plaintiffs' alternative argument is that they adequately have alleged investment injury by pleading that defendants derived income from the fraudulent sale of defective units, and that those racketeering profits were reinvested in the business, thus enabling further fraudulent sales. We rejected a comparable contention in *Banks* where we stated that section 1962(a) requires that plaintiff "allege that he was injured specifically by the use or investment of income." 918 F.2d at 421. Although plaintiffs contend that *Banks* is inconsistent with our opinion in *Town of Kearny v. Hudson Meadows Urban Renewal Corp.*, 829 F.2d 1263, 1268 (3d Cir. 1987), where we held that plaintiffs need only allege injury from the predicate acts rather than the pattern of racketeering, we reject that contention because *Kearny*, like *Sedima*, was interpreting section 1962(c) rather than section 1962(a).

More apt is our recent decision in *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406 (3d Cir.1991), where we held that plaintiffs who alleged injury resulting from defendants' fraudulent business practices had not pled a valid section 1962(a) claim. *See also Teti v. U.S. Healthcare, Inc.*, 1989 WL 143274, at *1 (E.D.Pa. Nov. 21, 1989) ("The fact that plaintiffs appear to claim that the fraud allegedly perpetrated on them would not have occurred without the investment of funds from earlier racketeering activities does not change the fact that their alleged injury stems from the alleged fraudulent representations, and not from the investment of funds by the defendants."), *aff'd without opinion*, 904 F.2d 696 (3d Cir.1990).

If investment injury is construed as broadly as plaintiffs suggest, the distinction between sections 1962(a) and 1962(c) would be blurred. We are unwilling to tamper with the congressional scheme. It follows that the district court did not err in dismissing plaintiffs' section 1962(a) claim.

## IV.

### The Section 1962(c) Claim

Section 1962(c) prohibits any "person" employed by or associated with any "enterprise" from conducting or participating in the "conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c) (1988). "Person" is defined as "any individual or entity capable of holding a legal or beneficial interest in property." 18 U.S.C. § 1961(3)(1988). "Enterprise" is defined as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4)(1988).

The district court dismissed plaintiffs' section 1962(c) claim for failure to plead persons distinct from the enterprise as required by our case law. In so ruling, the court relied, *inter alia,* on our decision in *B.F. Hirsch v. Enright Refining Co.,* 751 F.2d 628, 633 (3d Cir.1984), where we first held that the "person" charged with the RICO violation cannot be the same entity as the "enterprise" under section 1962(c). We reasoned that because Congress was concerned with preventing the takeover of legitimate businesses by criminals and corrupt organizations, section 1962(c) should be used against "the infiltrating criminals rather than the legitimate corporation which might be an innocent victim of the racketeering activity in some circumstances." *Id.* at 634. Thus, for a defendant "person" to be found liable under section 1962(c), the "person" must be associated with a separate "enterprise." Because Enright Refining Co. was the enterprise through which the racketeering activity was conducted, it could not be found liable as the defendant "person". *See also Haroco v. American Nat'l Bank & Trust Co.,* 747 F.2d 384, 401–02 (7th Cir.1984), *aff'd,* 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985). Although *Sedima* forecloses the analysis in terms of infiltrat-

ing criminals, the requirement of distinctiveness stems from the statute itself, and has been applied following *Sedima. See Petro–Tech, Inc. v. Western Co.,* 824 F.2d 1349, 1358–60 (3d Cir.1987).

Plaintiffs' complaint in this case alleges two alternative enterprises: 1) Meenan, Blueray and KOV Corporation; and 2) an association in fact "among Meenan, Blueray and Kenny, and other persons." App. at 16. With respect to the first alleged enterprise, the complaint names "Meenan, Blueray, and KOV" as both the "enterprise" and as the defendant "persons" liable under RICO. The district court properly determined that this claim cannot be sustained under the *Enright* rule requiring separate "enterprise" and "persons" under section 1962(c), and thus dismissed "the portion of plaintiffs' complaint naming Meenan, Blueray and KOV as the 'enterprise.' " App. at 77.

Plaintiffs, who apparently recognize on appeal the defect in their original pleading, have argued that we can rearrange the parties, so that Meenan (the parent corporation) should be viewed as the "person conducting the affairs of its subsidiary, the 'enterprise' Blueray, or vice versa." Appellant's brief at 22.[6] However, neither the amended complaint nor the RICO case statement signed by plaintiffs' counsel which sets forth plaintiffs' claims in more detail has alleged any basis by which the parent corporation or its subsidiary has the distinctiveness which would permit us to separate one from the other for purposes of the RICO claim. In *Brittingham v. Mobil Corp.,* 943 F.2d 297, 302–03 (3d Cir. 1991), we stated that "[w]ithout additional allegations ... a subsidiary corporation cannot constitute the enterprise through which a defendant parent corporation conducts racketeering activity." We noted that in *Petro–Tech,* we upheld the dismissal under Rule 12(b)(6) of claims against the parent when its subsidiary was named alternatively as the enterprise. *Id.* The

6. Plaintiffs do not proffer KOV as an independent enterprise or person. In the RICO case statement, plaintiffs state that "KOV is not alleged to have been a direct participant in defen-

dants' scheme to defraud, but is liable for the economic injuries to plaintiffs and members of the Class as the successor in interest to defendants Meenan and Blueray." App. at 117.

same reasoning requires us to hold here that neither Meenan nor its subsidiary Blueray can realistically serve as the enterprise through which one or the other can be viewed as conducting a pattern of racketeering activity.

■ Our recent opinion in *Brittingham* is also dispositive of the plaintiffs' second theory of enterprise, i.e., that the corporations and their employees formed an "association in fact." That theory has its genesis in this circuit in *Petro–Tech*, 824 F.2d 1349. As in this case, plaintiffs in *Petro–Tech* pled alternative "enterprises" for purposes of a section 1962(c) claim against a corporation. We affirmed the dismissal of the counts of the complaint that named the corporation as both an "enterprise" and a defendant, relying on *Enright.* However, we held the corporation could be liable as a defendant "person" where the "enterprise" was alleged to be an association in fact consisting of the corporation and the individual defendants. We noted that because the corporation was "alleged to have attempted to benefit from its employees' racketeering activity, it is appropriate to allow the victims of that activity to recover from Western." *Id.* at 1361; *see also Shearin v. E.F. Hutton Group, Inc.,* 885 F.2d 1162, 1165–66 (3d Cir.1989) (holding that a complaint alleged a proper section 1962(c) claim against three corporate defendants where the enterprise was alleged to be an association of the three corporations).

The district court in this case understandably struggled with the scope of *Petro–Tech,* because the court was concerned that the association in fact theory could be used by plaintiffs to circumvent the separate person/enterprise requirement of section 1962(c).[7] However, we do not find persuasive the court's attempt to limit the language of *Petro–Tech.*[8] Rather, we rely on the *Brittingham* decision which clarified the law in this circuit as to the status of claims under section 1962(c) that allege an association in fact among a corporation and its employees, agents, and affiliated entities.

In *Brittingham,* individual consumers who purchased Hefty "degradable" garbage bags brought suit, alleging that the bags were misleadingly advertised as less harmful to the environment than other types of bags. Plaintiffs named as defendant "persons" Mobil Corporation (Mobil) and one of its affiliates, Mobil Chemical Company (Mobil Chemical). The enterprise was alleged to be " '[t]he association in fact of Mobil and Mobil Chemical, the advertising agencies engaged by them, ... and other entities which participated in the marketing of [the garbage] bags.' " 943 F.2d at 300.

We held that the defendant "persons" were not distinct from the alleged association in fact enterprise for the purposes of the *Enright* rule. We noted that "the *Enright* rule would be eviscerated if a plain-

7. Other courts have noted this concern, particularly where the enterprise is alleged to be an association in fact consisting of a defendant corporation and individuals associated with the corporation. *See Haroco,* 747 F.2d at 401 ("it is not obvious that the problem can be resolved by merely alleging that the corporation and its employees constitute an association in fact"); *Radionic Industries, Inc. v. GTE Products Corp.,* 665 F.Supp. 622, 629 (N.D.Ill.1987) ("To speak of a corporation 'associating with' an 'association in fact' of itself and its workers is to venture onto the very path which *Haroco* closed: a corporation cannot associate with itself for purposes of § 1962(c) liability."). It is not significant that in this case, unlike in *Haroco* and *Radionic,* the alleged association in fact does not have perfect identity with the defendant persons; plaintiffs' RICO case statement explains that the "other persons" composing the association in fact includes a public relations

firm that worked on advertisements for the "blue flame" units. *See* App. at 119–20. It can hardly be suggested that the public relations firm was the "person" who used the "association in fact" enterprise to perpetrate a pattern of racketeering distinct from that of the corporate defendants.

8. The court stated that *"Petro–Tech's* exception to the person/enterprise separateness requirement ... applies only in cases where the corporation is the designated beneficiary of the racketeering activity, and the fictional association in fact enterprise is the only means of reaching the entity in which the profits derived from the victims reside." App. at 80–81. The district court held that because recovery was possible without resorting to the *Petro–Tech* rationale, "plaintiffs may not avail themselves of the association in fact loophole." App. at 84.

tiff could successfully plead that the enterprise consists of a defendant corporation in association with employees, agents, or affiliated entities *acting on its behalf.* The distinctiveness requirement ensures that RICO sanctions are directed at the persons who conduct the racketeering activity, rather than the enterprise through which the activity is conducted." *Id.* at 301 (emphasis added). Accordingly, we held that "a § 1962(c) enterprise must be more than an association of individuals or entities conducting the normal affairs of a defendant corporation. A corporation must always act through its employees and agents, and any corporate act will be accomplished through an 'association' of these individuals or entities." *Id.*

While we noted that it was theoretically possible for a corporation to play a separate "active" role in RICO violations committed by its employees and agents, *id.* at 302; *see also Petro–Tech,* 824 F.2d at 1361, we held that when the alleged association in fact entity is in reality no different from the association of individuals or entities that constitute the defendant "person" or carry out its activities, the *Enright* distinctiveness requirement is not met. *Brittingham,* 943 F.2d at 302–03.

Although *Brittingham* noted that *Petro–Tech* concerned a motion to dismiss whereas *Brittingham* arose in a summary judgment context, *id.,* we do not believe that *Brittingham* is inapplicable on that ground. In this case, the complaint was supplemented by the RICO case statement which, like the complaint, is signed by plaintiffs' counsel.[9] Nothing in that statement alleges the kind of distinctiveness which *Brittingham* held was necessary to satisfy the *Enright* rule. *Brittingham* clearly states that "[w]ithout *allegations or evidence* that the defendant corporation had a role in the racketeering activity that was distinct from the undertakings of those acting on its behalf, the distinctiveness requirement is not satisfied." *Id.* at

302 (emphasis added). Further, we stated that "the *Petro–Tech* court recognized that claims will not always survive a motion to dismiss even when the defendant is facially distinct from the alleged enterprise." *Id. Brittingham* requires plaintiffs' complaint to allege that the corporate defendants have played some distinct and active role in the alleged racketeering activity apart from the actions of their employees, affiliates, and agents if they are jointly to be regarded as an association in fact.

Here, the association in fact theory that plaintiffs allege in their complaint states that the enterprise "is comprised of the association in fact among Meenan, Blueray, and Kenny, and other persons." App. at 16. Under the *Enright* rule, this alleged association in fact must be distinct from defendant "persons" Meenan, KOV, and Blueray, and their employees, agents, and affiliates. *Enright Refining Co.,* 751 F.2d at 633; *see Brittingham,* 943 F.2d at 302.

■ Plaintiffs argue that this is one of those rare cases in which the corporate defendants are distinct from the alleged association in fact among the corporate defendants and their employees and agents. But plaintiffs do not allege in their complaint or in the RICO case statement that defendants Meenan, Blueray, or KOV had any active role in the alleged racketeering activity apart from the activities of their affiliated entities, employees, and agents. In their Supplemental Letter on the effect of *Brittingham* submitted at our request, plaintiffs argue that Meenan became an active participant by "making a corporate acquisition, expending its assets on marketing and selling activities, and reaping the profits from the sales of the Blueray 'blue flame' products." However, none of these alleged activities constitute an "active role" in the alleged racketeering activity distinct from the actions carried out by Meenan's employees and agents.[10]

In short, in this case as in *Brittingham,* we are dealing with an alleged marketing

---

9. Courts may consider the RICO case statement in assessing whether plaintiffs' RICO claims should be dismissed. *See, e.g., Dennis v. General Imaging, Inc.,* 918 F.2d 496, 511 (5th Cir. 1990); *Sil–Flo, Inc. v. SFHC, Inc.,* 917 F.2d 1507, 1516 (10th Cir.1990).

10. Plaintiffs attempted to make the necessary distinction by alleging in the RICO case statement that "[a]lthough marketing of [the 'blue flame'] units to distributors and dealers may have been in the normal course of business, fraudulently marketing the 'blue flame' units

fraud in which the corporations, Meenan and Blueray, had no separate active roles in the alleged racketeering activity apart from the actions of their agents and affiliates that also comprise part of plaintiffs' alleged "association in fact." Therefore, we conclude that plaintiffs' attempt to circumvent *Enright* by pleading the association in fact theory must be rejected.

■ We consider the one remaining possibility alluded to, albeit not vigorously pressed, by plaintiffs. In *Brittingham* we noted that "individual defendants in contrast to collective entities, are generally distinct from the enterprise through which they act." 943 F.2d at 302. We therefore consider whether, in light of the pleadings before us, the individual defendants who were officers and employees of the corporations can be the "persons" who were conducting a pattern of racketeering through the corporations as an enterprise. Although that is a viable theory under RICO, this is not the appropriate case in which it can be applied. As we explained in *Petro–Tech*, "section 1962(c) was intended to govern only those instances in which an 'innocent' or 'passive' corporation is victimized by the RICO 'persons,' and either drained of its own money or used as a passive tool to extract money from third parties." 824 F.2d at 1359. Such an interpretation avoids the absurd result that a corporation may always be pled to be the enterprise controlled by its employees or officers.

An illustration of the situation under which individuals could be considered persons conducting the affairs of the corporations through a pattern of racketeering activity is provided in *Banks*, where we dismissed the corporation as a RICO defendant because it had been named as both "enterprise" and defendant "person," but we left the action standing against certain individual defendants. Although we did not discuss the person/enterprise dichotomy because the issue on appeal concerned the pattern of racketeering, we note that the two individuals retained as "persons" had allegedly participated in a pattern of activity that extended beyond the particular scheme that caused the injury to the plaintiffs. We stated that "the amended complaint charges the Cohens [the individual persons] with using FFIC and FFFG [the corporations comprising the enterprise] in the commission of four other frauds between 1984 and 1989." 918 F.2d at 424.[11]

■ At oral argument we questioned plaintiffs' counsel on the theory in this case which would permit us to view the individual defendants as using the corporations for their own benefit. Counsel responded that the individuals ultimately took Meenan private and used the gains for their own ends. This theory was also articulated in their Supplemental Letter. Assuming that there could be a viable section 1962(c) claim in which Meenan could be regarded as the victim enterprise, it is not the RICO claim alleged. The RICO case statement makes abundantly clear that the plaintiffs' injuries for which suit was brought arose out of their failure to "obtain the safe, state-of-the-art units for which they paid." App. at 122.

The individual defendants were alleged to have participated in the fraudulent advertising as agents of the corporation. The RICO case statement alleges merely that "[a]ll of the defendants held positions as officers and principals of the corporate defendants, and received income as such. All of the defendants derived income from each and every sale of the 'blue flame' products. These sales were generated by defendants' multiple mail fraud violations which combined into a pattern of racketeering." App. at 132–33. This activity is in-

was clearly outside their corporate course of business." App. at 129. This is merely playing with words and does not represent a distinction of substance.

11. Similarly, in *Kehr Packages,* 926 F.2d at 1411, plaintiffs alleged that defendants Fidelity Bank and individual Fidelity employees violated section 1962(c). Because Fidelity was named as both the "enterprise" and a defendant "person," in violation of the *Enright* rule, we dismissed Fidelity as a RICO defendant. Although we proceeded to consider the viability of the section 1962(c) claim against the Fidelity employees, and sustained the dismissal against them on other grounds, we never considered whether they were "persons" distinct from the corporation.

distinguishable from that alleged as to the corporations and is a far cry from the use by individuals of an innocent passive corporation contemplated by *Petro-Tech.* We conclude therefore that this is not the situation in which individual defendants, whether employees/officers or not, can be viewed as distinct from the corporations deemed the enterprise. It follows that dismissal of the section 1962(c) claim was not erroneous.

■ We are concerned about the alacrity with which plaintiffs appear to grasp at any theory of alignment of parties which might withstand dismissal. A RICO complaint is not a mix and match game in which plaintiffs may artfully invoke magic words to avoid dismissal. Instead, to plead a claim under section 1962(c) the complaint must be capable of being read to satisfy the statutory requirement that persons were conducting a pattern of racketeering through a separate and distinct enterprise. That requirement does not do violence to the notion of notice pleading. It simply reinforces the renewed emphasis on the obligation of responsible pleading. *See* Fed.R.Civ.P. 11 Advisory Committee Notes on 1983 Amendment.

## V.

### The Section 1962(d) Claim

■ Plaintiffs' complaint alleges that "[d]efendants Meenan and Blueray conspired with defendant Kenny, and other persons, the identities of whom are presently unknown, to violate 18 U.S.C. § 1962(a) and (c)." Although the complaint does not specifically mention section 1962(d), the district court examined the conspiracy claim under section 1962(d) because that is the RICO section dealing with conspiracy. The district court dismissed the claim based on its findings that: 1) there can be no conspiracy between a corporate entity and its employees; and 2) plaintiffs failed properly to plead the conspiracy claim.

Section 1962(d) provides that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section." In *Shearin,* 885 F.2d at 1166, this court set forth the

pleading requirements for RICO conspiracy allegations in civil cases:

To plead conspiracy adequately, a plaintiff must set forth allegations that address the period of the conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose. Additional elements include agreement to commit predicate acts and knowledge that the acts were part of a pattern of racketeering activity. (citations omitted).

The district court assumed that the complaint adequately pled a time period, object and certain acts of the conspirators, but determined that plaintiffs failed adequately to allege the conspiracy elements of agreement and knowledge that the defendants' acts were part of a pattern of racketeering activity. This finding was not erroneous as a matter of law. The complaint alleges no facts to support an allegation of agreement and knowledge.

■ Plaintiffs argue that agreement and knowledge can reasonably be inferred from the relationship of the defendants as interrelated corporate entities operating under the common control of Kenny. This court in *Shearin* held that the nature of the association between three companies "gives rise to a necessary inference" that the parties agreed to the ongoing acts, and knew that the acts were part of an overall pattern of racketeering activity. *Shearin,* 885 F.2d at 1167. Such an inference was reasonable in *Shearin* because in that case the complaint alleged that the relationship between the parent corporation and its subsidiaries was established solely for the purpose of perpetrating securities fraud. Plaintiffs have not alleged that any of the corporations in this case were set up specifically to perpetrate fraud. Indeed, even if an "agreement" to commit predicate acts could be inferred from the complaint, we have held that "mere agreement to commit the predicate acts is not sufficient to support a charge of conspiracy under § 1962(d)." *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.,* 742 F.2d 786, 792 n. 8 (3d Cir.1984), *cert. denied,* 469 U.S. 1211, 105 S.Ct. 1179, 84 L.Ed.2d 327 (1985). It follows that the district court did not err in dismissing the section 1962(d) claim.

## VI.

### *Conclusion*

We do not minimize either the seriousness of the alleged misrepresentations or the injuries they may have caused. However, as we suggested at the outset, civil RICO does not become the claim of choice for every fraud suit.

For the reasons set forth, we will affirm the district court's dismissal of all of plaintiffs' claims.