**Joseph CALABRESE, Plaintiff,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant.**

**No. 92 C 1249.**

United States District Court, N.D. Illinois, E.D.

April 2, 1992.

---

Terrence M. Jordan, Chicago, Ill., for plaintiff.

William A. Montgomery, Joseph A. Cancila, Aphrodite Kokolis, Schiff, Hardin & Waite, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

In February of this year Joseph Calabrese ("Calabrese") filed a Complaint against State Farm Mutual Automobile Insurance Company ("State Farm"), attempting to jump onto the RICO merry-go-round and to grab RICO's brass ring of treble damages and attorneys' fees. That effort proved unavailing—centrifugal force (in the form of this Court's brief February 27, 1992 memorandum opinion and order (the "Opinion," 1992 WL 47997)) immediately threw Calabrese off of that merry-go-round because his Complaint had disclosed on its face the absence of subject matter jurisdiction in this District Court.

Nothing daunted, Calabrese's counsel again tried to get on board via a motion for reconsideration and for leave to file a First Amended Complaint (the motion was tendered to the Clerk of Court on March 9 of this year). When that motion was then presented in open court by Calabrese's lawyer, this Court (1) orally pointed out some of the continuing problematic areas of the First Amended Complaint, (2) furnished to Calabrese's lawyer a copy of the standing order that is in use in the United States District Court for the Western District of Pennsylvania and a number of other federal courts (an order that prescribes the form and content of a RICO case statement to be presented with every RICO complaint [1]), (3) directed counsel to file such a RICO statement on or before March 30 and (4) set the matter for a further status hearing at 9 a.m. April 6, 1992.

Calabrese's lawyer has timely filed a lengthy (32–page) RICO statement. That statement has served its intended function here: Although it discloses that there are a number of threshold problems or potential problems with Calabrese's new pleading, one of those in particular appears to be fatal at the outset.

■ At page 27 of the statement, Calabrese's counsel begins his account of "[a]dditional information offered to the court for consideration in the processing of these RICO claims" with this paragraph:

> Plaintiff contends that the fraud has continued through the present day by virtue of the continued efforts by STATE FARM to enforce and uphold the originally obtained fraudulent award. Nonetheless, the act which was intended to complete the fraud upon Mr. Calabrese was the issuance of the arbitration award denying the uninsured motorist claim. That act was accomplished by the mailing of the award on March 6, 1987. The RICO complaint was filed in February of 1992 well within the 5 year statute of limitations.

---

**1.** This Court does *not* require such statements as a matter of course. On the contrary, it has limited the need for counsel to file such a statement to a small number of situations in which one or more obvious flaws have appeared from this Court's initial scrutiny of the RICO complaints involved.

But counsel is simply wrong: It has been definitively established since June of 1987 (coincidentally only a few months after Calabrese's purported RICO claims would have accrued) that the RICO statute of limitations is *four* years and not *five* years (*Agency Holding Corp. v. Malley–Duff & Associates, Inc.*, 483 U.S. 143, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987)).

That then dooms Calabrese's RICO claims as barred by limitations, based on his own statement of the circumstances. In that respect it is necessary only to address first the question of when such RICO claims are deemed to have accrued in general terms, then perhaps whether that general rule is modified in this instance by Calabrese's contention of a continuing fraud on State Farm's part (but see n. 2).

■ As for the concept of accrual of RICO claims, the majority rule (under RICO as under the Clayton Act, which was the analogous statute from which *Malley–Duff* drew the four-year limitations period) is that the cause of action accrues at the time the plaintiff discovered or should have discovered the injury (see such post-*Malley–Duff* cases as *Rodriguez v. Banco Central*, 917 F.2d 664, 666–68 (1st Cir. 1990); *Riddell v. Riddell Washington Corp.*, 866 F.2d 1480, 1489–90 (D.C.Cir. 1989); *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1102–05 (2d Cir.1988); *Beneficial Standard Life Ins. Co. v. Madariaga*, 851 F.2d 271, 275 (9th Cir.1988), adhering to *State Farm Mutual Automobile Ins. Co. v. Ammann*, 828 F.2d 4, 5 (9th Cir. 1987); *Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp.*, 828 F.2d 211, 220 (4th Cir.1987); and the affirmance without published opinion in *Hofsetter v. Fletcher*, 860 F.2d 1079 (6th Cir.1988)). Several oth-

er circuits have added the fillip that in order to start the limitations clock ticking the plaintiff must also know, or at least should have known, that his or her injury was suffered as the result of conduct that was part of a pattern of racketeering activity (see *Glessner v. Kenny*, 952 F.2d 702, 706–08 (3d Cir.1991); *Granite Falls Bank v. Henrikson*, 924 F.2d 150, 153–54 (8th Cir.1991); *Bath v. Bushkin, Gaims, Gaines and Jonas*, 913 F.2d 817, 820–21 (10th Cir.1990); and *Bivens Gardens Office Building, Inc. v. Barnett Bank of Florida, Inc.*, 906 F.2d 1546, 1552–55 (11th Cir.1990)).

As it turns out, it does not matter in this case which of those two approaches is adopted, for in Calabrese's situation the factor added by the minority view simply telescopes into the majority's discovery-of-plaintiff's-injury rule.[2] But because the issue is a recurring one on which so many Courts of Appeal (excluding our own) have opined, as have a number of this Court's colleagues, it is worth addressing here.

As between the two competing approaches, both of which have undergone a process of evolution (for example, *Glessner* modified the Third Circuit's prior approach in *Keystone Ins. Co. v. Houghton*, 863 F.2d 1125 (3d Cir.1988) in light of the later Eleventh Circuit opinion in *Bivens Gardens*), this Court opts for the developing minority view. · It appears clearly preferable because the injury of which a RICO plaintiff complains is injury sustained not from the predicate acts simpliciter, but rather from the RICO violation. And because one essential ingredient of every RICO violation is a pattern of racketeering activity, it seems only reasonable that the discovery rule should apply to plaintiff's RICO injury

---

**2.** That is so because, as indicated in the text that follows, Calabrese himself has shown that he discovered both of those alleged factors (the fact that he had sustained the complained-of injury *and* the fact that he was the claimed victim of only one of a number of like actions on State Farm's part that made up the pattern of alleged racketeering activity) over four years before this action was brought. Indeed, *Glessner*, 952 F.2d at 708 has made it plain even for those courts following the minority view that if a plaintiff's initial required discovery took place more than

four years earlier, any further injuries that may have been suffered by the plaintiff *within* the four-year limitations period are not actionable unless they are "separate and independent"—"new and distinct"—from the initial injury. That concept means that the last nail has been driven into the coffin of Calabrese's putative claim whatever view is taken of the time of its accrual. It thus becomes unnecessary to look at what Calabrese mistakenly labels as "continuing fraud."

(hence including the pattern of racketeering element) rather than simply to the sustained harm alone.

Having said that, however, this Court should make clear that what it does *not* view as an acceptable rule is one that has been announced by some of its colleagues in the Northern District of Illinois, under which the limitations time clock does not begin to run until discovery of the "last predicate act," which in turn serves to keep alive all potential RICO claims that preceded such discovery no matter how far back they may have been triggered. For the most part those decisions were motivated by the courts' concern over the possibility that the simple discovery-of-plaintiff's-injury rule could actually outlaw a claim before it arose (suppose for example that plaintiff has been injured by defendant's fraudulent conduct in year "x," but that defendant's other fraudulent activity necessary to a finding of a pattern of racketeering activity does not occur until year "x + 5"). But any such concern, though perhaps understandable, does not call for a "last predicate act" rule:

1. In real world terms any prospect of the actual loss of a claim before it even ripens is highly remote—if it exists at all. That hypothesized scenario would most likely fail to satisfy the "continuity" prong of the "continuity plus relationship" dichotomy as explicated by the Supreme Court in *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). Thus it would certainly be rare that any such sequence of events would give rise to a RICO claim at all.

2. What is more likely is that enforcement of a discovery rule that focuses only on the date that the plaintiff has sustained harm would give plaintiff something less than four years to file suit if the existence of a pattern is not discoverable until later. To the extent that a concern of that nature has any force, though, the problem is really resolved by the approach that the minority of the Courts of Appeals have developed—and for the most part that development took place after the judges on

this District Court who have opted for a "last predicate act" rule had decided that issue in the way that they did.

It seems to this Court that it takes only a little sober analysis to recognize the illogic of employing, as the deferred triggering date for a plaintiff's own RICO cause of action, a last predicate act of (say) mail fraud that inflicts harm not on the plaintiff but on some other person, where the plaintiff should have known well before that last predicate act that defendant was engaging in a pattern of racketeering activity. And the same illogic is involved where the "last predicate act" is one that may have harmed the plaintiff instead. Both those situations may be well illustrated by a variation on the earlier example: Suppose that in year "x" the plaintiff knew or should have known both (1) that he or she had been injured and (2) that the injury was caused by RICO-violative conduct (that is, conduct that was part of a pattern of racketeering activity), but plaintiff nonetheless failed to sue at any time to and including year "x + 4." *Malley–Duff* would clearly dictate the barring of plaintiff's RICO claim. Yet if the same RICO offender were then to commit a new but similar fraud in year "x + 5," inflicting harm either on plaintiff or some other victim in what could be viewed as part of the earlier "pattern," the "last predicate act" approach would cause plaintiff's previously-outlawed claim to rise like Lazarus from the dead—a patent subversion of the principles of repose that inform the entire concept of statutes of limitation to begin with.

As stated earlier, this Court views the clearly preferable rule to be that most recently announced in *Glessner*, which addresses the real problem posed by a more simplistic discovery rule without distorting matters by keeping alive (or even reviving) claims that ought to be (or have been) barred by limitations. But before that subject is closed, in fairness it bears repeating that the bulk of the opinions by this Court's colleagues that have espoused the "last predicate act" approach were written before the development of the variant on the discovery rule that has most recently been refined in *Glessner*. If an opportunity to revisit the subject were to arise now,

it may well be that those judges who have announced their adherence to the "last predicate act" rule will shift their approach accordingly.

█ It remains only to apply the proper rule to Calabrese's claims. In this instance Calabrese's own conduct (where he, through his present counsel, sued State Farm in 1987 charging the very same asserted fraud that he now advances) establishes conclusively that the four-year statute had expired before he tried to enlarge the area of dispute by advancing RICO claims in this federal court. That earlier action reached the Illinois Appellate Court in *Calabrese v. State Farm Mutual Automobile Ins. Co.*, 187 Ill.App.3d 349, 134 Ill.Dec. 932, 543 N.E.2d 215 (1st Dist.1989). It is not relevant to the untimeliness of Calabrese's current claims that he may have fleshed out more of the information needed for ultimate proof of that claim within the four years preceding the current filing—that does not help to avoid the impact of the discovery rule, either in its pristine form or with the added facet adopted by the minority view among the Courts of Appeals. Nor, for the reason identified in *Glessner* and explained in n. 2, is Calabrese saved by the fact that he may have felt some of the sting—the damages—from the alleged RICO violations within the prefiling four year period.[3]

Accordingly this Court anticipates denying Calabrese's motion on the scheduled April 6 status date. This opinion is being issued in advance of that date so that Calabrese's counsel is apprised of the problem confronting him, and so that he may offer up—if he is able to—some reason for allowing his motion in the face of what is said here.[4]

---

3. Indeed, Calabrese's disclosure of his state-court litigation against State Farm appears to identify a second and wholly independent potential block of his current RICO action—that of claim preclusion (often termed res judicata). Under the circumstances, however, there is no need to address that issue. One fatal flaw is quite enough.

---

4. Although State Farm has not appeared in this action, copies of the brief, 1992 WL 47997, February 28 Opinion and of this opinion are being transmitted contemporaneously to the lawyers with Querrey & Harrow, Ltd. who represented State Farm in Calabrese's state court appeal.