PAGNOTTI ENTERPRISES, INC., and Pagnotti Coal Company, Plaintiffs,

v.

Louis J. BELTRAMI, Elaine C. Beltrami, and Beltrami Enterprises, Incorporated, Defendants and Counterclaim Plaintiffs.

and

LUCKY STRIKE COAL CORPORATION, Third–Party Plaintiffs,

v.

Robert FIDATI, Joseph Pagnotti, Sr., Louis Pagnotti, Jr., and James Tedesco, Third–Party Defendants,

and

Pagnotti Enterprises, Inc., and Pagnotti Coal Company, Third–Party Defendants and Counterclaim Defendants.

No. 3:CV–91–609.

United States District Court, M.D. Pennsylvania.

March 4, 1992.

Joseph G. Ferguson, Rosenn, Jenkins & Greenwald, Wilkes–Barre, Pa., for plaintiffs/counterclaim defendants.

Ronald V. Santora, Arthur L. Piccone, Hourigan, Kluger, Spohrer & Quinn, Wilkes–Barre, Pa., for original defendants/counterclaim plaintiffs and third-party plaintiffs.

## MEMORANDUM

McCLURE, District Judge.

### BACKGROUND

This action was commenced by plaintiffs on May 6, 1991. On September 3, 1991, the defendants filed a counterclaim and third party complaint. In response to the plaintiffs' and third party defendants' motions to dismiss the counterclaim and third-party complaint, the defendants filed an amended counterclaim and third-party complaint on October 22, 1991. Once again, the plaintiffs and third-party plaintiffs have filed motions to dismiss the counterclaim and third-party complaint.

This action arises from the attempted acquisition of Beltrami Enterprises Incorporated ("BEI") and its wholly-owned subsidiary, Lucky Strike Coal Company ("Lucky Strike"), by Pagnotti Enterprise, Inc. ("PEI"). Although PEI took control of the day to day operations and finances of BEI and Lucky Strike on March 17, 1982, the transaction was never closed, thereby denying PEI any ownership rights in the companies. This action was initiated by plaintiffs PEI and Pagnotti Coal Company ("PCC"), a wholly-owned subsidiary of PEI, to obtain relief from BEI, its president and sole shareholder, Louis J. Beltrami, and his wife, Elaine C. Beltrami, based on alleged violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), breach of contract, fraud, negligent misrepresentation, fraudulent conveyance, unjust enrichment, breach of guaranty and breach of fiduciary duty. Louis Beltrami and BEI responded with a counterclaim and third-party complaint asserting similar theories of liability against the original plaintiffs, along with the officers, directors and shareholders of PEI, namely Robert Fidati, Joseph Pagnotti, Sr., Louis Pagnotti, Jr., and James Tedesco as third-party defendants (individual third-party defendants collectively referred to as "Pagnotti defendants"). Louis Beltrami, BEI and Lucky Strike (collectively "Beltrami group") have since filed an amended counterclaim and third-party complaint presumptuously adding Luck Strike as third-party plaintiff without following the procedures required for adding such a party to this lawsuit.

### RELEVANT FACTS

The facts as alleged in the amended counterclaim and third-party complaint may be summarized as follows:

PEI, PCC, BEI and Lucky Strike are companies engaged in the business of surface mining. In the early months of 1982 extensive negotiations were conducted between Louis Beltrami and the Pagnotti defendants concerning the possible sale of BEI and Lucky Strike to PEI. On March

17, 1982, an oral agreement was reached whereby PEI would 1) take immediate possession and control of BEI and Lucky Strike, 2) purchase the stock of BEI and Lucky Strike for the sum of three million five hundred thousand dollars ($3,500,-000.00), 3) be responsible for the day to day operations of BEI and Lucky Strike, 4) allow Louis Beltrami and Joseph Beltrami to remain on the payroll of BEI, 5) allow Louis Beltrami to retain the title of president of BEI and Lucky Strike, but not the decision-making powers associated therewith, 6) transfer certain specified assets of BEI and Lucky Strike to Louis Beltrami free of all liens and encumbrances, 7) advance any and all monies necessary to operate BEI and Lucky Strike, and 8) assume any and all liabilities of BEI and Lucky Strike.

With the exception of the transfer of stock, all of the requirements of this oral agreement have been met by the parties. Louis Beltrami claims that he has been ready, willing and able to transfer his stock since March 17, 1982. He maintains that despite taking possession and control of BEI and Lucky Strike since March 17, 1982, the Pagnotti defendants refuse to acknowledge the existence of the oral agreement and have refused to close the deal. It is interesting to note that PEI and PCC filed this lawsuit based on the alleged refusal of Louis Beltrami to turn over his stock in BEI and Lucky Strike.

## LUCKY STRIKE

The first issue the court must address is the presence of Lucky Strike in this lawsuit. Lucky Strike is not an original defendant, and its only role in this case is that of a third-party plaintiff. In the amended counterclaim and third-party complaint, counsel for the Beltrami group attempted to add Lucky Strike as a party under the rules governing joinder of an additional party pursuant to a counterclaim. *See* Fed.R.Civ.P. 13(h), 19 and 20. However, Lucky Strike's claims are not in the form of a counterclaim. Lucky Strike is not being sued by any of the parties to this litigation, therefore it is impossible for it to file a claim to counter a non-existing claim.

Lucky Strike's sole role in this lawsuit is that of a third-party plaintiff asserting a claim against the original plaintiffs, PEI and PCC, and new third-party defendants, the Pagnotti defendants. Although counsel for the Beltrami group indicated in the amended counterclaim and third-party complaint that Lucky Strike is being brought into this action pursuant to the joinder rules, Fed.R.Civ.P. 13(h), 19 and 20, this is not the appropriate method for enlisting Lucky Strike's presence in this lawsuit. Based on their language, the joinder rules are reserved for situations in which the existing claims reveal that an outside party has an interest in the action and is needed for just adjudication.

In the instant matter, Lucky Strike is affirmatively asserting a claim along with the original named defendants. It is not being brought into the case because it has an interest in the claims which already exist.[1] Therefore, Lucky Strike is attempting to intervene in this action. Fed.R.Civ.P. 24(c) states "[a] person desiring to intervene shall serve a motion to intervene upon the parties as provided in Rule 5." If Lucky Strike wishes to intervene it must first comply with Rule 5.

Since, in all likelihood, Lucky Strike will comply with Rule 5 and be permitted to intervene in this action, *see* Fed.R.Civ.P. 24(a) and (b), in the interest of expedience, the court will address the motion to dismiss the counterclaim and third-party complaint as if Lucky Strike were currently a party to this action.

## 12(b)6) STANDARD

A motion to dismiss under Fed.R.Civ.P. 12(b)(6) admits the well pleaded allegations of the complaint, but denies their legal sufficiency. *Hospital Building*

---

**1.** Joinder would have been the appropriate method had the Beltrami defendants chosen not to amend their original counterclaim and simply requested that Lucky Strike be joined because it had an interest in the claims asserted in the original counterclaim.

*Co. v. Trustees of the Rex Hospital,* 425 U.S. 738, 740, 96 S.Ct. 1848, 1850, 48 L.Ed.2d 338, 341 (1976). "It is the settled rule that 'a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Leone v. Aetna Cas. & Sur. Co.,* 599 F.2d 566, 567 (3rd Cir.1979), quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

The complaint must be read in a light most favorable to the plaintiff with every doubt resolved in plaintiff's favor. *In re Arthur Treacher's Franchisee Litigation,* 92 F.R.D. 398, 422 (E.D.Pa.1981).

## RICO

Count I of the amended counterclaim and third-party complaint asserts a RICO claim against PEI, PCC and the Pagnotti defendants (collectively "Pagnotti group"). It asserts RICO claims based upon violations of 18 U.S.C. § 1962(a), (b), (c) and (d). The predicate acts of racketeering committed by the Pagnotti group alleged to constitute a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5) are the following: (1) assuming possession and control of BEI and Lucky Strike; (2) inducing Louis Beltrami to surrender possession and control of BEI and Lucky Strike by fraudulently misrepresenting their intention to fulfill the terms and conditions of the oral agreement reached on March 17, 1982; (3) operating and controlling all aspects of BEI and Lucky Strike since March 17, 1982, as a result of the aforementioned fraudulent misrepresentation; (4) utilizing and converting to their own use, benefit and financial gain all of the assets of BEI and Lucky Strike since March 17, 1982; (5) misappropriating the assets of BEI and Lucky Strike for their own use, benefit and financial gain since March 17, 1982; (6) assuming exclusive supervision and control of the mining and reclamation operations of BEI and Lucky Strike since March 17, 1982, which has led to the assessment of civil penalties and the suspension of various permits by the Pennsylvania Department of Environmental Re-

sources ("DER"); (7) refusing to honor the agreement of March 17, 1982, by failing to fulfill all of its terms and conditions; and (8) the denial of the existence of the agreement of March 17, 1982 to the DER and other parties.

### A. Pattern of Racketeering Activity

A " 'pattern of racketeering activity' requires at least two acts of racketeering activity." 18 U.S.C. § 1961(5). Racketeering activity is defined as (A) certain acts chargeable under state law, (B) acts indictable under specific provisions of Title 18 of the United States Code, (C) acts indictable under specific provisions of Title 29 of the United States Code, (D) any offense involving fraud in connection with a case under title 11, fraud in the sale of securities, or the felonious manufacture or distribution of drugs, or (E) any act indictable under the Currency and Foreign Transactions Reporting Act. 18 U.S.C. § 1961(1).

A review of the allegations of racketeering activity in the instant case reveals no pattern of racketeering activity within the meaning of Sections 1961(1) and (5). First of all, the amended counterclaim and third-party complaint attempt, with little success, to allege three acts as eight by repeatedly alleging the same acts in different terms. In reality, the only acts alleged are that the Pagnotti group misrepresented its intention to purchase the stock of BEI and Lucky Strike, assumed possession and control of BEI and Lucky Strike, and reneged on the agreement to purchase the stock of BEI and Lucky Strike.

Among these predicate acts, only the alleged fraudulent misrepresentation could possibly constitute a predicate act of racketeering under RICO. The amended counterclaim and third-party complaint essentially set forth a claim for breach of contract or fraud, not a RICO claim. For all intents and purposes the Beltrami group is complaining of one act: the Pagnotti group's failure to purchase the stock of BEI and Lucky Strike held by Louis Beltrami pursuant to the oral agreement of March 17, 1982, which transferred posses-

sion and control of BEI and Lucky Strike to the Pagnotti group. This does not constitute a RICO cause of action.

Due to the lack of the requisite pattern of racketeering activity, in addition to other reasons which follow, the amended counterclaim and third-party complaint fail to state valid RICO causes of action under the respective statutes.

### B. 18 U.S.C. 1962(a)

■ The Beltrami group alleges that the Pagnotti group has "received and conspired to receive, directly or indirectly, income and assets derived from the pattern of racketeering activity set forth hereinabove ... and have used or invested, or conspired to use or invest, directly or indirectly, such income and assets from [BEI] and Lucky Strike, or the proceeds of such income and assets in the operation of the enterprise or an association in fact."

Section 1962(a) states

It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt ... to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

The primary function of this subsection is to halt the investment of racketeering proceeds into legitimate businesses. *Brittingham v. Mobil Corp.*, 943 F.2d 297, 303 (3rd Cir.1991). Since Section 1962(a) is directed at the use or investment of racketeering income, a plaintiff is required to establish that his injuries were caused by the use or investment of income in the enterprise. *Rose v. Bartle*, 871 F.2d 331, 358 (3d Cir. 1989). The Third Circuit has recently stated "[f]ollowing traditional concepts of causation, we believe § 1962(a) requires the plaintiff to demonstrate that the use or investment of racketeering income was a 'substantial factor' in causing the injury." *Brittingham*, supra, at 304.

■ The only injury alleged by the Beltrami group is the conversion and misappropriation of the assets of BEI and Lucky Strike. However, the assets of BEI and Lucky Strike are alleged to have been obtained by the Pagnotti group through the alleged predicate racketeering act of fraud. The Third Circuit has made it abundantly clear that plaintiffs may not rely on injuries resulting from the commission of the alleged predicate acts in stating a violation of Section 1962(a). *Glessner v. Kenny*, 952 F.2d 702, 708–710 (3d Cir.1991); *Brittingham*, supra, at 304–5. As previously noted, a valid Section 1962(a) claim is stated only when a plaintiff specifically alleges an injury caused by the *use or investment* of racketeering income. "Section 1962(c) is the proper avenue to redress injuries caused by the racketeering acts themselves." *Brittingham*, supra, at 305. To hold otherwise would render the distinction between Section 1962(a) and 1962(c) meaningless. *Ibid.*

### C. 18 U.S.C. § 1962(b)

The Beltrami group alleges that the Pagnotti group "acquired control of [BEI] and Lucky Strike by virtue of the pattern of racketeering as set forth ... [above] permitting them to be in a position of influence and control over said companies".

Section 1962(b) states:

It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

■ Indeed, had the Pagnotti group acquired control of BEI and Lucky Strike through a pattern of racketeering activity, it would constitute a violation of this section. However, as noted above, the Beltrami group has not sufficiently alleged predicate acts which amount to a pattern of racketeering activity. Reading the amended counterclaim and third-party complaint in a light most favorable to the Beltrami group with every doubt resolved in its fa-

vor, it is clear that the only allegedly unlawful act committed by the Pagnotti group enabling it to take control of BEI and Lucky Strike is the refusal to recognize the obligation to purchase Louis Beltrami's stock pursuant to the prior oral agreement. This clearly does not amount to acquiring control of the companies through a pattern of racketeering.

### D. 18 U.S.C. § 1962(c)

The Beltrami group alleges that the Pagnotti group, comprised of PEI, PCC and the officers, directors and shareholders of PEI, Robert Fidati, Joseph Pagnotti, Sr., Louis Pagnotti, Jr., and James Tedesco, "formed a union or group of individuals associated in fact to constitute an 'enterprise' within the meaning of 18 U.S.C. § 1961(4), having as a common or shared purpose the takeover of [BEI] and Lucky Strike, the conversion of their assets, and the misrepresentation of their intentions concerning the Agreement." They allege further that the Pagnotti group has "conducted and/or participated in the affairs of [BEI] and Lucky Strike by virtue of a pattern of racketeering activity as set forth ... [above], by being employed by or associated with the enterprise."

Section 1962(c) states:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

The import of this section is clear. It applies to a person who is associated with an enterprise and who participates in the conduct of the enterprise's affairs through a pattern of racketeering activity. Technically speaking, the Beltrami group has failed to allege a violation of this section. First it asserts that the enterprise is the Pagnotti group, then it claims that the Pagnotti group participated in the affairs of BEI and Lucky Strike through a pattern of racketeering. Significantly, they fail to allege that the affairs of the enterprise, the Pagnotti group, were conducted through a pattern of racketeering. Semantics aside, assuming that the allegation is technically correct, it fails to allege an enterprise sufficiently distinct from the defendants.

■ In the Third Circuit, the culpable "person" and the "enterprise" must be separate and distinct entities. *Saporito v. Combustion Engineering, Inc.*, 843 F.2d 666, 678 (3d Cir.1988); *Petro–Tech, Inc. v. Western Co. of North America*, 824 F.2d 1349, 1359 (3d Cir.1987). That is, the person charged with the RICO violation under § 1962(c) cannot be the same entity as the alleged enterprise. *B.F. Hirsch v. Enright Refining Co., Inc.*, 751 F.2d 628, 633 (3d Cir.1984). Since a corporation cannot operate except through its officers and agents, a corporate "enterprise" and its employees are not separate and distinct for the purposes of § 1962(c). *Tarasi v. Dravo Corp.*, 613 F.Supp. 1235, 1237 (W.D.Pa.1985).

[A] corporation can only operate through its officers and agent(s). Thus, for the purpose of ascertaining § 1962(c) liability, [the chief executive officer of the corporation] is the same entity as and should be treated in the same manner as [the corporate defendant].

*Ellis v. Merrill Lynch & Co.*, 664 F.Supp. 979, 982 (E.D.Pa.1987). See *Petro–Tech, Inc. v. The Western Company of North America*, supra, at 1359 (a corporation is not liable under § 1962(c) for the predicate acts committed by its employees); *Newfield v. Shearson Lehman Bros.*, 699 F.Supp. 1124, 1126–27 (E.D.Pa.1988) ("Since Shearson is a corporation, which cannot act but through its agents, plaintiff [in alleging that the enterprise consisted of Shearson and two of its employees] has in effect pleaded the existence of an association-in-fact of a corporation with its agents ... This will not satisfy the non-identity requirement."); *Medallion TV Enterprises, Inc. v. SelecTV of California, Inc.*, 627 F.Supp. 1290, 1294–95 (C.D.Cal.1986); *Waldo v. North American Van Lines, Inc.*, 669 F.Supp. 722, 737–39 (W.D.Pa.1987); *Minnesota Odd Fellows Home Foundation v. Engler & Budd Co.*, 630 F.Supp. 797, 800 (D.Minn.1986). Cf. *Chambers De-*

*velopment Co. v. Browning–Ferris Industries,* 590 F.Supp. 1528, 1541–42 (W.D.Pa. 1984) (a corporation and its agents are not capable of conspiracy together because they are legally the same person).

■■■ Through two recent opinions the Third Circuit has reinforced its view as to the "enterprise" pleading requirements under Section 1962(c). In *Glessner v. Kenny,* 952 F.2d 702 (3d Cir.1991) and *Brittingham v. Mobil Corp.,* 943 F.2d 297 (3rd Cir.1991), the Third Circuit held that the enterprise element is not sufficiently alleged when the association of individuals conducting the racketeering activity includes a corporation in association with its employees, agents or affiliated entities acting on the corporation's behalf.

> We believe a § 1962(c) enterprise must be more than an association of individuals or entities conducting the normal affairs of a defendant corporation. A corporation must always act through its employees and agents, and any corporate act will be accomplished through an "association" of these individuals or entities. Consequently, the [*B.F. Hirsch v.*] *Enright* [*Refining Co., Inc.,* 751 F.2d 628 (3d Cir.1984)] rule would be eviscerated if a plaintiff could successfully plead that the enterprise consists of a defendant corporation in association with employees, agents or affiliated entities acting on its behalf. The distinctiveness requirement ensures that RICO sanctions are directed at the persons who conduct the racketeering activity, rather than the enterprise through which the activity is conducted. Therefore, we must examine the enterprise allegation to determine whether it is no more than an association of individuals or entities acting on behalf of a defendant corporation. Our decision is in accord with numerous courts that have rejected attempts to circumvent the distinctiveness requirement by alleging enterprises that are merely combinations of individuals or entities affiliated with a defendant corporation.

*Id.* at 301.

> Unlike individual defendants, a corporation can act only through its employees and agents. *Petro–Tech* holds that a defendant also named as an enterprise cannot be held vicariously liable for the actions of its employees. A plaintiff cannot circumvent this holding merely by alleging that the enterprise is an association in fact consisting of the defendant and individuals or entities acting on its behalf. Without allegations or evidence that the defendant corporation had a role in the racketeering activity that was distinct from the undertakings of those acting on its behalf, the distinctiveness requirement is not met.

*Id.* at 302.

In *Glessner* the Third Circuit rejected a Section 1962(c) RICO claim alleging an association in fact of a corporation, its wholly owned subsidiary, and employees based upon the defendants' alleged misrepresentations regarding the efficiency and safety of furnaces sold by the subsidiary. In rejecting the association in fact as a RICO enterprise, the court almost exclusively relied on its decision in *Brittingham* quoting it extensively.

> Further, [in *Brittingham*] we stated that "the *Petro–Tech* court recognized that claims will not always survive a motion to dismiss even when the defendant is facially distinct from the alleged enterprise." ... *Brittingham* requires plaintiffs' complaint to allege that the corporate defendants have played some distinct and active role in the alleged racketeering activity apart from the actions of their employees, affiliates, and agents if they are jointly to be regarded as an association in fact.

*Glessner v. Kenny, supra,* 952 F.2d at 712.

Therefore, since the Beltrami group has alleged no more than an association of individuals or entities acting on behalf of a defendant corporation, they have failed to allege a sufficiently distinct enterprise for the purpose of triggering RICO sanctions.

**E. 18 U.S.C. § 1962(d)**

■■■ The Beltrami group alleges that the Pagnotti group conspired to violate 18 U.S.C. §§ 1962(a), (b) and (c) "by associating in the enterprise, participating in its

affairs, and engaging in the pattern of racketeering as set forth [above]." Section 1962(d) makes it unlawful for any person to conspire to violate any of the RICO sections. However, since the Beltrami group has failed to allege any activity which falls within the purviews of RICO, the conspiracy claim, which is based on the same acts, also must fail.

## JURISDICTION

Subsequent to reviewing the law regarding RICO enterprises, the court took the opportunity to review the RICO allegations in the original complaint. In the original complaint, PEI and PCC allege that Louis Beltrami, Elaine Beltrami and BEI violated Section 1962(c). PEI and PCC claim that Louis and Elaine Beltrami conducted the affairs of BEI through a pattern of racketeering activity to defraud PEI and PCC.

While this claim is asserted against Elaine Beltrami, the wife of Louis Beltrami, the complaint fails to contain even one allegation concerning her role in the RICO activity. She appears to be included solely because she is the wife of Louis Beltrami. It is interesting to note that but for the presence of Elaine Beltrami in this suit, the RICO claim of PEI and PCC would be subject to dismissal for failure to allege an enterprise distinct from the defendant corporation. Since Louis Beltrami is the sole shareholder of BEI, he is not separate and distinct from the defendant corporation for the purposes of a RICO claim under Section 1962(c). *See* Subsection D, *supra.*

 The RICO allegation in the original complaint is the sole basis of federal jurisdiction in this case. Its dismissal would require the dismissal of the entire lawsuit for want of jurisdiction. A suit may be dismissed for lack of jurisdiction where the claim upon which federal question jurisdiction is based "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous." *Junior Chamber of Commerce of Rochester, Inc. v. United States Jaycees, Tulsa, Okl.,* 495 F.2d 883, 885–86 (10th Cir.1974) (citing *Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939, 943 (1946)). Dismissal of a suit based upon a federal question claim "is appropriate 'when the allegations of the complaint clearly demonstrate that plaintiff does not have a claim.' " *Lakeside Community Hospital v. Tahoe Regional Planning Agency,* 461 F.Supp. 1150, 1153 (D.Nev. 1978) (quoting Wright & Miller, Federal Practice & Procedure: Civil § 1357 at p. 604 (West 1969).

As the court noted above, while Louis Beltrami maintains that despite taking possession and control of BEI and Lucky Strike, the Pagnotti defendants refuse to acknowledge the existence of the oral agreement and have refused to close the deal by purchasing his stock, PEI and PCC filed this lawsuit claiming that Louis Beltrami has refused to turn over his stock. Based on this, it would appear that the parties are on opposite sides of the exact same claim. Therefore, just as the Pagnotti group has argued that the Beltrami group's RICO claim was in reality a claim for breach of contract or fraud, it appears that the RICO claim asserted by PEI and PCC, although more well-crafted, is subject to the same argument.

As the Third Circuit stated in *Glessner, supra,*

> We do not minimize either the seriousness of the alleged misrepresentations or the injuries they may have caused. However, as we suggested at the outset, civil RICO does not become the claim of choice for every fraud suit.

*Id.* at 715. Accordingly, PEI and PCC will be required to show cause why this action should not be dismissed for lack of jurisdiction, due to the insufficiency of their RICO claim for the reasons set forth herein.

Because dismissal of the RICO claim contained in the original complaint would necessarily render this court without jurisdiction to decide this case, the court will hold its decision on the remainder of the instant motion to dismiss in abeyance until final disposition of the order to show cause why this action should not be dismissed in its entirety for lack of jurisdiction.

## ORDER

For the reasons stated in the accompanying memorandum, IT IS ORDERED THAT:

1. Count I of the amended counterclaim and third-party complaint is dismissed.

2. Plaintiffs shall, within twenty (20) days from the date of this order, show cause why this matter should not be dismissed for lack of subject matter jurisdiction for the reasons stated in the accompanying memorandum. If they so desire, within the same time-frame, any other party to this litigation may also file a brief addressing this issue. Failure of the plaintiffs to file a timely brief shall result in the dismissal of this action.

3. Final disposition of the motion to dismiss the amended counterclaim and third-party complaint shall be held in abeyance pending the outcome of the aforementioned order to show cause.