**PEMBERTON SALES & SERVICE, INC., and Arthur Pemberton, Plaintiffs,**

v.

**BANCO POPULAR de PUERTO RICO, Defendant.**

Civ. No. 1993–07.

District Court, Virgin Islands, D. St. Thomas and St. John.

Nov. 7, 1994.

Kenth W. Rogers, St. Thomas, VI, for plaintiffs.

J. Daryl Dodson, Chad Messier, and Dudley, Topper and Feuerzeig, St. Thomas, VI, for defendant.

### MEMORANDUM AND ORDER

FRANK A. KAUFMAN, Senior District Judge.

(1) Reference is hereby made to defendant's motion to dismiss the corporate plaintiff, dated April 4, 1994. Reference is also made to defendant's motion for summary judgment with regard to all of plaintiffs' claims, as well as, for summary judgment upon its own counterclaim, dated July 25, 1994. Reference is further made to all other filings in this case. Pursuant to the Federal Civil Rules 12 and 56, this Court will treat defendant's said motion to dismiss as a motion for summary judgment in view of the presence in the record of items other than pleadings.

(2) Defendant's motion to dismiss seeks dismissal of all tort claims asserted by the corporate plaintiff, Pemberton Sales and Services, Inc. (hereinafter "Pemberton Sales"), on the grounds that Pemberton Sales failed to maintain its corporate good standing with the regulatory authorities of the Virgin Islands when the claims arose and did not meet its regulatory obligations pursuant thereto, until after the statute of limitations with respect to those claims had expired. In its motion for summary judgment, defendant renews its request that this Court dismiss the said tort claims asserted by Pemberton Sales.

(3) For the reasons stated in the within Memorandum and Order, this Court hereby grants defendant's motion for summary judgment with regard to each of plaintiffs' claims against defendant. Additionally, this Court hereby grants defendant's motion for summary judgment with respect to defendant's counterclaim.

(4) In 1992 defendant, Banco Popular de Puerto Rico (hereinafter "Banco Popular"), sought to collect a $10,000 loan in connection with which Banco Popular asserted default by plaintiffs. In the within case, Pemberton Sales and Arthur Pemberton (hereinafter "Pemberton") have sued defendant for wrongful dishonor of a check (Count I); various alleged torts (Counts II, III, IV, and V); racketeering conspiracies (Counts VI and VIII); and breach of duty of good faith (Count VII). A federal question exists with regard to plaintiffs' racketeering claim. Therefore, this Court has jurisdiction pursuant to 28 U.S.C. § 1331. Additionally, because there is diversity of citizenship, this

Court has jurisdiction pursuant to 28 U.S.C. § 1332.

(5) The relevant facts in this case, except where noted to the contrary in this Memorandum and Order, are undisputed. On February 14, 1990 Pemberton executed a promissory note (hereinafter "car note") in the principal sum of $9,028.95, with interest as provided in the note.[1] The proceeds of the car note were used to finance a Jeep Wrangler. The Jeep served as collateral for the car note and the bank filed an appropriate financing statement.[2] In 1992 Pemberton transferred the Jeep to another individual without informing defendant, obtaining defendant's permission, or paying off the balance of the car note. Pemberton's car note is currently in default and Pemberton has failed to make the required principal and interest payments. As of July 25, 1994, the outstanding balance on the car note was $8,558.07.

Pemberton is a stockholder, officer and director of Pemberton Sales. The business of Pemberton Sales involves the importation and sale of janitorial and other chemicals. Pemberton Sales' primary supplier of chemicals was H.C. Caribbean Chemicals, Inc. (hereinafter HCC). Hercillo Rodriquez (hereinafter "Rodriquez") was the President of HCC at all relevant times. On October 5, 1990, Pemberton Sales issued a check in the amount of $5,000 to Rodriquez. On October 15, 1990, Pemberton Sales issued a check in the amount of $3,500 to Rodriquez.[3] On November 20, 1990, Pemberton Sales borrowed $14,200 from defendant which was used to finance supplies which Pemberton Sales needed in order to comply with a government contract. As part of the loan agreement, Pemberton Sales assigned its rights for monies due under that government contract to defendant.[4] On January 18, 1991, Pemberton deposited into Pemberton Sales' checking account a Virgin Islands government check, received by Pemberton Sales in accordance with the said government contract, in the amount of $13,830.25 which equalled the proceeds from the government contract. On January 22, 1991, Rodriquez presented the aforementioned checks, totalling $8,500[5], to the Ponce, Puerto Rico branch of defendant for payment. At the time of presentment, Pemberton Sales had only $183.32 in available funds.[6] Banco Popular erroneously allowed Rodriquez to cash the $5,000 check drafted by Pemberton Sales. Rodriquez also deposited the $3,500 check, drafted by Pemberton Sales, into his account and was given a provisional credit. Also on January 22, 1994, Pemberton deposited a check in excess of $4,000 into the account of Pemberton Sales. On January 23, 1991, defendant asserted its contractual rights under the November 20 loan and debited $9,750 from Pemberton Sales' account. On January 24, 1991, the $3,500 check was returned for insufficient funds and Rodriquez' account was debited accordingly. On January 25, 1991, Rodriquez contacted defendant and inquired about the debit. Defen-

---

**1.** See Defendant's motion for summary judgment, exhibit D.

**2.** See Defendant's motion for summary judgment, exhibit F. At page 41 of his deposition, Pemberton claims that the car note was not secured by the Jeep. However, the financing statement and car note itself clearly indicate the status of the Jeep as collateral for the car note.

**3.** See Defendant's motion for summary judgment, exhibit B.

**4.** See Defendant's Reply to Opposition to Summary Judgment, exhibits B & D.

**5.** See Defendant's motion for summary judgment, exhibits N & O.

**6.** Under the Expedited Funds Availability Act, 12 U.S.C. § 4001 et seq., once a check is deposited, one business day must intervene between the business day upon which the check is deposited and the day upon which the funds become available. See 12 U.S.C. § 4002(b)(1). January 18, 1991 was a Friday. While January 21 was a Monday, it was also the Martin Luther King Jr. holiday. Therefore, the proceeds of the $13,-830.25 government check did not become available until Wednesday, January 23, 1991 (Tuesday, January 22, 1991 was the statutorily required intervening business day.) It should be noted that 12 U.S.C. § 4002(a)(2)(C) provides that proceeds from local government checks become available "the business day after the business day of which such funds [are] deposited." However, § 4002(a)(2)(C) also requires that a special deposit slip be used in depositing the government check. It is undisputed that Pemberton did not use a special deposit slip when making the deposit into Pemberton Sales' account.

dant immediately credited Rodriquez' account in the amount of $3,500.

On January 30, 1991 Pemberton Sales executed and delivered to defendant a promissory note in the principal sum of $10,000 together with the interest as provided by the note. That note was guaranteed personally by Pemberton and was secured by an appropriately perfected security agreement which granted to defendant a security interest in all of Pemberton Sales' contracts, accounts, documents of title, chattel paper, and instruments, whether existing or after-acquired.[7] That note became due on January 30, 1992; however, Pemberton Sales has yet to make any payments on the note. As of July 25, 1994, the principal sum of $10,000, together with accrued interest totalling $938.42, remained unpaid with respect to the note.

(6) Banco Popular contends that it is entitled to the grant of its pending summary judgment motions because no genuine issues of material fact exist with regard thereto. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986); *Petruzzi's IGA Supermarkets v. Darling–Delaware Co.*, 998 F.2d 1224, 1230 (3d Cir.1993). In that context, the non-movant party is entitled to have "all reasonable inferences ... [drawn] in the light most favorable to the non-moving party" *Petruzzi's*, 998 F.2d at 1230. *See also Big Apple BMW, Inc. v. BMW of North America, Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied* — U.S. ——, 113 S.Ct. 1262, 122 L.Ed.2d 659 (1993). The ultimate burden, however, lies with the non-moving party to show the existence of a genuine issue of material fact. The non-movant "may not rest upon the mere allegations or denials of [his or her] pleadings ... [but instead] must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Indeed, a party resisting summary judgment must "go beyond the pleadings and by [its] own affidavits, ... depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine

issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). If the non-movant offers evidence that is "merely colorable" or not "significantly probative", summary judgment may be granted. *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2510–11. " 'The opponent must do more than simply show that there is some metaphysical doubt as to material facts' ... [it must exceed] the 'mere scintilla' threshold." *Big Apple BMW*, 974 F.2d at 1363 (*citing Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986)).

■ (7) A stockholder, director, officer, or employee of a corporation may not recover for damages to an individual which are derived from an injury to the corporation.[8] In *Temp-way*, a corporation and two of its officers, shareholders, and guarantors brought a lender liability action arising from financial harm allegedly suffered as a result of a banking relationship with defendant bank. Both the corporation and the individuals brought claims for breach of fiduciary duty, breach of financing agreement, business coercion and economic duress, fraud, intentional interference with contractual relations, and negligent misrepresentation. The court, however, decided that the individual plaintiffs did not have standing because they sought recovery for damages sustained after they became stockholders, officers, or employees of the corporation. *Temp-way Corp. v. Continental Bank*, 139 B.R. 299, 317 (E.D.Pa.1992), *aff'd without op.* 981 F.2d 1248 (3d Cir.1992). The court pointed out that guarantors of the corporation's debt do not have standing to bring an action if the only harm suffered by them is derivative of the harm suffered by the corporation. *Id.*

■ In the instant case, apart from the claim of intentional infliction of emotional distress, all of Pemberton's alleged damages derive from harms allegedly suffered by

---

**7.** *See* Defendant's motion for summary judgment, exhibits J & V.

**8.** *See Pitchford v. PEPI, Inc.*, 531 F.2d 92, 96–97 (3d Cir.1975), *cert. denied*, 426 U.S. 935, 96 S.Ct.

2649, 49 L.Ed.2d 387 (1976); *Temp-way Corp. v. Continental Bank*, 139 B.R. 299 (E.D.Pa.1992), *aff'd without op.* 981 F.2d 1248 (3d Cir.1992).

Pemberton Sales, the corporation, and not by Pemberton personally as an individual. In his deposition Pemberton was asked "how has what the bank's done hurt you as a person individually, as opposed to you as a part of Pemberton Sales and Services?" His response was "I do not like to discuss my personal feelings," and "[a]nything that hurts my company hurts me." [9] Those responses, in addition to being vague, do not indicate any injury personal to Pemberton. Indeed, the nature of many of Pemberton's claims reveal no personal type of injury.

For example, Count I of the complaint asserts a cause of action for wrongful dishonor of the $3,500 check. But that check was drawn, not on Pemberton's personal checking account, but on Pemberton Sales' checking account. As a result, the damage, if any, was to Pemberton Sales, not to Pemberton personally.[10]

Similarly, Count II of the complaint alleges that Banco Popular tortuously interfered with Pemberton's personal business relationship with HCC. As in *Temp-way*, any business relationship that Pemberton had with HCC is derivative of the relationship between Pemberton Sales and HCC. Pemberton does not allege or argue that he maintained an individual business relationship with HCC. He cannot, therefore, maintain an individual cause of action in Count II.

Count III of the complaint alleges that Banco Popular fraudulently induced plaintiffs to do all of their business with Banco Popular and to rely upon credit provided by Banco Popular as the sole means of financing trade purchases made by Pemberton Sales. Once again, assuming, *arguendo* only, that those facts are true and that defendant committed fraud with respect thereto, they only reflect the on-going business relationship between Banco Popular and Pemberton Sales, not between Banco Popular and Pemberton personally.

In Count IV, Pemberton states a cause of action for damage to credit, claiming that through defendant's actions, HCC withdrew its credit to Pemberton Sales. Assuming that Banco Popular's actions indeed caused HCC to withdraw its credit to Pemberton Sales, Pemberton does not have standing to sue individually for damage to Pemberton Sales' credit, and has not pled any damage to his individual credit.

Counts VI and VII involve allegations that Banco Popular violated the Virgin Islands Racketeering and the Federal Racketeering statutes. Once again, Pemberton has failed to allege any personal injury apart from the injury allegedly suffered by the corporation.

■ Count VII of the complaint alleges that while plaintiffs performed all of their duties under the various banking contracts with Banco Popular, Banco Popular has "willfully, illegally and fraudulently broken said agreement in bad faith." [11] Once again Pemberton has asserted certain individual claims which do not exist. Of the three loans at issue in this case, only the car note was extended to Pemberton personally. With regard to the latter, contrary to Pemberton's assertions, Pemberton did not perform all of his duties under his contract with Banco Popular.[12] Defendant did not breach its duty of good faith with respect to the car note. The loan was in default for several months. Banco Popular made demand for payment which Pemberton ignored. Since Pemberton had conveyed the vehicle without the permission of Banco Popular, the latter wrote the loan off and reported it to the credit bureau. Pemberton may not meritoriously state a claim for breach of good faith when Banco Popular simply was asserting its rights under the loan contract.

With respect to the two other loans, they involved contracts between Pemberton Sales and Banco Popular. Therefore, as indicated *supra*, Pemberton has no standing as to

9. Deposition of Pemberton at 157–58.

10. *See* ¶ 9 *infra*.

11. Amended Complaint at ¶ 57, 60–61.

12. Pemberton does not dispute that he fell behind in his payments under the car note. Rather, he asserts that since Banco Popular wrote off the loan as a loss and reported such a loss to the credit bureau, he (Pemberton) was somehow relieved from his duties under the loan. *See* Deposition of Pemberton at 39–40.

those matters to assert any claim on his own behalf for alleged injury to Pemberton Sales.

■ Pemberton can assert and press individually his claim for intentional infliction of emotional distress. The Virgin Islands has adopted Section 46 of the Restatement (Second) of Torts with respect to intentional infliction of emotional distress.[13] Section 46(1) states:

One, who by extreme and outrageous conduct, intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

Comment d to Section 46 states that "liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." A plaintiff cannot survive a motion for summary judgment under the standards set forth *supra* unless such plaintiff has provided a record which shows that plaintiff has met the burden placed on it by comment d to section 46. *See Heywood v. Cruzan Motors, Inc.*, 792 F.2d 367, 371–72 (3d Cir.1986). In order so to do, a plaintiff must proffer conduct "so outrageous that no reasonable person in a civilized society would be expected to endure it." *Petersen v. First Federal Savings and Loan Ass'n*, 21 V.I. 429, 434, 617 F.Supp. 1039 (1985), (*quoting Moolenaar v. Atlas Motor Inns, Inc.*, 616 F.2d 87, 89 (3d Cir.1980)).[14] In the light of that standard, Pemberton's claims cannot survive. Assuming, *arguendo* only, that Banco Popular improperly dishonored checks, damaged Pemberton's credit ratings, tortiously interfered with Pemberton Sales' business relationship with HCC, and improperly wrote off the car note, such conduct does not rise to the level of the extreme and outrageous conduct prescribed by Section 46 and the cases applying that section.

According to comment j of Section 46, a plaintiff can only recover if "the distress inflicted is so severe that no reasonable man could be expected to endure it." Based on his deposition and the remainder of the summary judgment record presently before this Court, Pemberton has not offered sufficient evidence of sufficient suffering by him of severe emotional distress. When asked about his physical and emotional distress Pemberton responded "I suffered hypertension after this. I got wound up too, worrying about my business going down the drain...." When asked if there were any other medical condition or body symptoms he responded "not really, just a lot of stress and sleeplessness."[15]

While such symptoms may be unpleasant, they are not of the type which are so severe that no reasonable person could be expected to endure them. In *Alvarez*, the plaintiff was fired for theft and brought an action for severe emotional distress against his former employer. The symptoms complained of included elevated blood pressure, frequent headaches, need for medication and stress. The court found that the symptoms were typical of someone who is unemployed and held that they did not establish the severe distress element of the tort. *Alvarez v. Pueblo International, Inc.*, 24 V.I. 141, 147 (Terr.Ct.1989).[16] Similarly, Pemberton may indeed suffer from stress, hypertension and loss of sleep. However, such symptoms are typical of those encountered by many persons who constantly have to deal with the demands of a small business; they do not rise to the level of severity demanded by the tort of intentional infliction of emotional distress.

■ (8) The Virgin Islands Code mandates that no "corporation may commence or maintain an action in any court if it has not paid its annual franchise tax last due." 13 V.I.Code § 533(a). When Pemberton Sales

---

13. *See Heywood v. Cruzan Motors, Inc.*, 792 F.2d 367, 371 (3d Cir.1986); *Moolenaar v. Atlas Motor Inns, Inc.*, 616 F.2d 87, 89 (3d Cir.1980).

14. *See also Alvarez v. Pueblo International, Inc.*, 24 V.I. 141, 147 (Terr.Ct.1989) (*citing Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir.

1988) which itself cites to Restatement (Second) of Torts § 46, comment d (1965)).

15. *See* Deposition of Pemberton at 142–45.

16. *See also Moolenaar*, 616 F.2d at 89.

instituted the within action in this Court, it had not paid its corporate franchise taxes for the years 1990 through 1993 and, therefore, was not in good corporate standing.[17] Pemberton Sales did not pay its corporate taxes until June 10, 1994. Generally, a corporation will be allowed a reasonable time to become reinstated before its claim is dismissed. However, "dismissal will be proper, if the statute of limitations shall have expired by the time that the corporation shall be reinstated as a corporation in good standing." *Keith Enterprises, Inc. v. Centurion Corp.*, 9 V.I. 206, 209 (D.V.I.1973). In the instant case, Pemberton Sales did not pay its corporate taxes until after the two year statute of limitations had expired with regard to each and all of its within stated tort claims.[18] Pemberton Sales argues that where the tort arises from a contractual relationship, the six year statute of limitations applicable to claims for breach of contract governs rather than the limitation period for tort. Ordinarily, contract claims cannot be converted into tort claims unless there is an independent tort which arises from the breach of contract.[19] Moreover, once such an independent claim is asserted, the applicable statute of limitations is that which governs the independent tort, not the underlying contract. Pemberton Sales cannot seek greater recovery for alleged damages in tort and, at the same time, assert that the statute of limitations which applies is the one which governs breach of contract. Accordingly, since the corporate plaintiff was not in good standing when it asserted its tort claims (Counts II, III, and IV), and since the statute of limitations governing those tort claims had expired at the time of such filing, the corporate plaintiff is barred from asserting those claims. *See, generally, Celebrate and Party in Class, Inc. v. Banco Popular De Puerto Rico*, Civil No. 1990–116, Memoranda and Orders dated September 16, 1992 and March 3, 1993

(D.V.I., Division of St. Thomas and St. John) (Fullam, Sr. J).[20]

(9) In Count I, Pemberton Sales claims that Banco Popular wrongfully dishonored a check, made payable to Rodriquez in the amount of $3,500. As noted in ¶ 5, n. 6 *supra,* the dispute centers around the amount of available funds in Pemberton Sales' checking account. Both parties agree that more than $13,000 was deposited into the checking account on January 18, 1991. However, that does not necessarily mean that the entire balance was available. According to the Expedited Funds Availability Act, 12 U.S.C.A. § 4001 *et seq.,* Pemberton Sales was required to wait until the second business day following the business day of deposit before more than $100 of deposited funds became available. As the initial government check was deposited on the Friday before a three-day weekend, the proceeds did not become available under the Act until Wednesday, January 23, 1991. With respect to the January 22 check, the proceeds did not become available until January 24, 1991. Therefore, when Rodriquez went to the bank to present the checks on January 22, Pemberton Sales had only $183.32 in available funds. While the bank mistakenly allowed Rodriquez to cash the $5,000 check, it followed standard operating procedures with respect to the $3,500 check which was deposited into Rodriquez' account—it accorded to Rodriquez a provisional credit which was then debited from Rodriquez' account when the check was returned for insufficient funds. Further, in terms of actual damage to Rodriquez, Rodriquez' deposition states that after one phone call to the bank, the $3,500 was restored to his account.[21] Consequently, Rodriquez did not suffer any substantial harm as the money was restored to his account within twenty-four (24) hours.

---

**17.** *See* Affidavit of Ms. Lorna Webster, Director of the Division of Corporation and Trademark, Office of the Lt. Governor.

**18.** 5 V.I.C. § 31 provides that the statute of limitations for tort claims is two years.

**19.** *See Windsor Securities, Inc. v. Hartford Life Insurance Co.,* 986 F.2d 655, 664 (3d Cir.1993)

("Breach of contract without more is not a tort").

**20.** Copies of those Memoranda and Orders have been placed in the Court file in this case.

**21.** *See* Deposition of Rodriquez at 60.

■ Additionally, under the terms of the November 20, 1990 loan, Pemberton Sales assigned to Banco Popular the right to collect, at any time and without notice, amounts owed to it under the terms of the loan.[22] When Pemberton deposited the $13,820.35 government check, therefore, the bank had every right to debit Pemberton Sales' account under the terms of the loan agreement. Finally, the checks which Pemberton Sales issued to Rodriquez in October were not presented to Banco Popular for payment until January. In his deposition, Rodriquez testified that Pemberton called Rodriquez, told him that a deposit had been made, and that the October checks would now clear.[23] Pemberton informed Rodriquez of the deposit despite the fact that Pemberton Sales had an outstanding loan obligation to defendant. Based on the facts and sworn statements, it does not appear that the bank in any way wrongfully dishonored a check.

(10) Pemberton Sales, in Count VIII, claims that defendant violated the federal civil Racketeer Influenced and Corrupt Organizations Act (hereinafter "RICO"). Standing in RICO suits is determined by 18 U.S.C. § 1964(c) which states that:

> Any person injured in his business or property by reason of a violation of § 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

Thus, the first threshold which a plaintiff in a civil RICO suit must meet is a violation of § 1962.

■ Most courts of appeals, including the Third Circuit, have stated that in order to have standing to sue under § 1962(a), one must allege an injury caused by the actual investment or use of proceeds of racketeering activity.[24] Under that approach, a plaintiff must not only allege the predicate acts which violate § 1962(a), but also must allege that the use or investment of proceeds from a RICO violation caused an actual injury to the plaintiff's business or property. *Rose v. Bartle*, 871 F.2d 331, 356–57 (3d Cir.1989). In *Rose*, the Court held that "requiring the allegation of income use or injury 'is consistent with both the literal language and the fair import of the language.'" *Id.* at 358 (*quoting P.M.F. Services, Inc. v. Grady*, 681 F.Supp. 549, 555 (N.D.Ill.1988)). The Court concluded that the plaintiff did not have standing because the complaint contained no allegations as to injury caused by the defendants' use or investment of racketeering income. In the same vein, injury caused by predicate acts of racketeering or remote allegations of injury from use or investment are insufficient to establish the requisite injury under § 1962(a).

> If this remote [investment] connection were to suffice, the use-or-investment injury requirement would be almost eviscerated when the alleged pattern of racketeering is committed on behalf of a corporation ... Over the long term corporations generally reinvest their profits, regardless of source.

*Brittingham v. Mobil Corp.*, 943 F.2d 297, 305 (3d Cir.1991).[25]

■ In the instant case, Pemberton Sales has not sufficiently shown that it has been directly harmed as a result of Banco Popular's investment of alleged racketeering income. As did plaintiffs in *Brittingham*,

---

22. *See* Agreement of Assignment, ¶¶ 1 & 11.

23. *See* Deposition of Rodriquez at 57.

24. *See Lightning Lube Inc. v. Witco Corp.*, 4 F.3d 1153, 1188–89 (3d Cir.1993); *Glessner v. Kenny*, 952 F.2d 702, 708 (3d Cir.1991); *Brittingham v. Mobil Corp.*, 943 F.2d 297, 304 (3d Cir.1991); and *Rose v. Bartle*, 871 F.2d 331, 356–57 (3d Cir.1989). *But see Busby v. Crown Supply*, 896 F.2d 833, 837 (4th Cir.1990) ("The 'investment use' rule is flawed" and thus, predicate acts alone meet the § 1962(a) requirements).

25. *See also Glessner*, 952 F.2d at 708–10; *Quaknine v. MacFarlane*, 897 F.2d 75, 83 (2d Cir. 1990) (where the Second Circuit held that a RICO claim was properly dismissed because the complaint did not allege facts "asserting injury by reason of defendants' investment of racketeering income."); *Grider v. Texas Oil & Gas Corp.*, 868 F.2d 1147, 1151 (10th Cir.) *cert. denied*, 493 U.S. 820, 110 S.Ct. 76, 107 L.Ed.2d 43 (1989) ("[B]ecause [the plaintiff] has failed to allege any facts showing injury from the use or investment of racketeering income, he has no standing to assert a claim for damages based on a violation of section 1962(a)").

Pemberton Sales claims an injury from alleged racketeering activities, but Pemberton Sales does not explain how it was injured by the use of racketeering income as opposed to the alleged racketeering acts themselves. The only allegations of injury are that Banco Popular's income increased over a three year period and that this increase in size allowed defendant to "coerce" Pemberton Sales into doing further business with defendant. However, simple reinvestment of proceeds of alleged racketeering activity does not meet the requirements of § 1962(a). *Brittingham,* 943 F.2d at 304.

▇▇▇▇▇ (11) In addition to showing injury from racketeering activities, § 1962(a) requires a plaintiff to demonstrate that defendant participated in a pattern of racketeering activity. "A pattern is not formed by 'sporadic activity'" *H.J., Inc. v. Northwestern Bell Telephone, Co.,* 492 U.S. 229, 239, 109 S.Ct. 2893, 2900, 106 L.Ed.2d 195 (1989). In proving a pattern, a plaintiff must demonstrate "that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *Id.* The Court emphasized that allegations cannot constitute a RICO pattern unless they satisfy both the "relatedness" and "continuity" tests. In adopting a multi-factor test for relatedness the Court looked to whether the alleged predicate acts "are interrelated by distinguishing characteristics and are not isolated events." *Id.* at 240, 109 S.Ct. at 2901. Accordingly, the length of time during which alleged criminal activity takes place, therefore, is an important factor. *Id.* at 242, 109 S.Ct. at 2902. In *Kehr Packages v. Fidelcor, Inc.,* 926 F.2d 1406 (3d Cir.), *cert. denied* 501 U.S. 1222, 111 S.Ct. 2839, 115 L.Ed.2d 1007 (1991), the Third Circuit addressed this issue within a case involving alleged mail fraud relating to the alleged purpose of causing plaintiff to default on its loans. The court concluded that the plaintiff's complaint did not set forth acts which constituted a "pattern of racketeering." Rather the allegations "involve[d] a short-term attempt to force a single entity into bankruptcy, and contain[ed] no additional threat of continued criminal activity." *Id.* at 1417.

26. *See* Amendment Complaint ¶ 57, 60–61.

▇▇ Similarly, in the instant case, Pemberton Sales has not demonstrated that Banco Popular has engaged in any predicate acts. Assuming, *arguendo* only, that Banco Popular did commit such acts, the acts were directed toward a single entity, and lasted only a short period of time. Such activity does not meet the pattern requirement as set forth in § 1962(a) and articulated in *H.J. Inc.* and *Kehr Packages.*

(12) In Count VI, Pemberton Sales also asserts a claim against defendant for violation of the Virgin Islands Criminally Influenced and Corrupt Organizations Act (hereinafter "CICO"). CICO is cast in the mold of the federal RICO statute. Like RICO, CICO also makes it unlawful to engage in a "pattern of criminal activity [or to] use or invest ... proceeds thereof." 14 V.I.Code § 605(b) and (c). Such a pattern is defined as "two or more occasions of conduct (1) that: (A) constitute criminal activity; (B) are related to the affairs of the enterprise and (C) are not isolated ..." 14 V.I.Code § 604(j). In its complaint, Pemberton Sales does not sufficiently allege, nor does the record in this case sufficiently indicate, a violation of any of the provisions of § 605. Rather, Pemberton Sales simply alleges a general violation of CICO, without indicating how the defendant received, used or invested proceeds of alleged racketeering activities. As with the RICO claim, assuming, *arguendo* only, that defendant did commit the predicate acts, Pemberton Sales still has not demonstrated the requisite pattern of criminal activity. Therefore, for the same reasons stated in ¶ 11 *supra,* Pemberton Sales has not met its burden in connection with Count VI.

(13) In Count VII, Pemberton Sales alleges that defendant "willfully, illegally and fraudulently breached said agreement in bad faith."[26] However, beyond such a conclusory assertion, Pemberton Sales does not disclose what contracts were breached or how the alleged breach constitutes bad faith. From what this Court can surmise from the record before it, Pemberton Sales believes that Banco Popular's requesting payment for the past-due $10,000 note, returning the $3,500

check, and abiding by the loan agreement of the November 20, 1990 loan by debiting Pemberton Sales' checking account when proceeds of the government contract were deposited to it, were all acts taken in bad faith. However, each of the aforementioned actions by defendant were seemingly permitted by standard banking practices, federal law, and the agreements which plaintiffs signed. Further, plaintiffs have given this Court no specifics concerning which actions were undertaken in bad faith or the specifics of any such bad faith. Accordingly, defendant is entitled to the grant of summary judgment with respect to Count VII.

(14) It is undisputed that Pemberton executed and delivered the car note to Banco Popular on February 14, 1990. Additionally, it is clear from the record, that the car note was secured by the Jeep Wrangler which Pemberton subsequently conveyed to an unknown party without the permission of defendant. Pemberton has failed to make payments under the terms of the note and is in default. As of July 25, 1994, a total balance of $8,558.07 remained unpaid on the car note. Moreover, it is also undisputed that on January 30, 1991 Pemberton Sales executed and delivered a note, secured by all of Pemberton Sales' contracts, accounts, documents of title and instruments, in the amount of $10,000 plus interest, due on January 30, 1992. Pemberton Sales is in default on that note and Banco Popular has demanded payment. As of July 25, 1994, the principal balance of $10,000 plus $938.42 in accrued interest remains unpaid.

 Generally, debt actions are well suited for summary judgment. Because "of the relative simplicity of the issues involved, suits to enforce promissory notes are 'among the most suitable classes of cases for summary judgment.'" *Topalian v. Ehrman,* 954 F.2d 1125, 1137 (5th Cir.1992) (*quoting Colony Creek Ltd. v. Resolution Trust Corp.,* 941 F.2d 1323, 1325 (5th Cir.1991) and *Lloyd v. Lawrence,* 472 F.2d 313, 316 (5th Cir.1973)). In the instant case, neither the loan notes nor the status of payment is disputed. Therefore, summary judgment on Banco Popular's counterclaim is appropriate.

(15) During a June 27, 1994 telephone conference this Court warned Pemberton Sales of its concerns regarding the RICO claim. In an Order dated July 14, 1994, this Court required plaintiff to show cause as to why the RICO suit should not be dismissed and as to why sanctions should not be imposed. In response, Pemberton Sales submitted a motion to dismiss the order to show cause. In its motion, Pemberton Sales relied on its previously filed RICO "supplement." Such a "supplement" is substantively different from the statutorily required RICO case statement, and does not comply with this Court's July 14, 1994 Order. As of this date, however, this Court, unless it timely otherwise decides, does not expect to impose sanctions against plaintiffs under the Federal Civil Rules.

(16) In accordance with the foregoing, summary judgment is hereby GRANTED in favor of defendant as to all claims asserted in this case by plaintiffs. Accordingly, judgment with respect thereto will be entered for defendants in a separate Order of even date herewith. Additionally, defendant's motion for summary judgment with regard to its counterclaim is hereby GRANTED and judgment will be entered for defendant in the amount of $19,496.49 in the above referenced separate Order.

(17) It is so Ordered.

### APPENDIX

### IN THE DISTRICT COURT OF THE VIRGIN ISLANDS

### DIVISION OF ST. THOMAS AND ST. JOHN

Celebrate and Party in Class, Inc., Plaintiff,

v.

Banco Popular de Puerto Rico, Defendant.

Civil No. 1990–116

September 16, 1992

*MEMORANDUM AND ORDER*

FULLAM, Senior District Judge.

The Defendant bank wrongfully dishonored several checks issued by the Plaintiff,

and Plaintiff has brought this action to recover damages for negligence, breach of contract, wrongful interference with contractual relations, and punitive damages. Defendant, by Motion for Partial Summary Judgment, seeks dismissal of all claims other than those based upon breach of contract and negligence. And, by a separate Motion to Dismiss, Defendant also seeks dismissal of all tort claims, including the negligence claims.

A Virgin Islands statute, Title 13 Virgin Islands Code, § 533, provides:

"No corporation may commence or maintain any action in any court if it has not paid its annual franchise tax last due."

Defendant's Motion to Dismiss is accompanied by an affidavit of the appropriate official of the Virgin Islands Government, attesting to the fact that the Plaintiff, as of August 11, 1992, had failed to file franchise tax report, annual report or financial statements for the years 1988, 1989, 1990, 1991 and 1992, and that it was then "considered not to be in good standing".

Plaintiff's Response to the Motion to Dismiss does not directly challenge these assertions. Plaintiff, instead, has merely submitted a certification, from the same government official, attesting to the fact that, as of August 14, 1992, Plaintiff was in compliance with the statutory requirements and "is considered to be in good standing" under the statute.

The Defendant argues, and Plaintiff does not dispute, that Plaintiff only achieved compliance with the statute sometime after August 11, 1992. It thus appears that, at the time this suit was filed, and at all times thereafter until on or about August 12, 1992, Plaintiff lacked the capacity to file or maintain this law suit.

Since Plaintiff is now in compliance, there is no statutory impediment to its continued maintenance of this litigation, to the extent that, on the date it achieved compliance with the statute, it had valid claims which could then be pursued. While the statute of limitations had not then expired with respect to Plaintiff's claims based upon contract, all of its tort claims were time-barred as of the date Plaintiff achieved compliance with the statute.

In *Keith Enterprises Inc. v. Centurion Corporation,* 9 V.I. 206 (D.V.I.1973), it was held that, although the general rule is to allow a corporation a reasonable time to become reinstated before dismissal of its litigation pursuant to 13 V.I.C. § 533(a)

"This general rule will not be applied, and dismissal will be proper, if the statute of limitations shall have expired by the time the corporation shall be reinstated as a corporation in good standing." *See also Cirino v. Hess Oil Virgin Islands Inc.,* 384 F.Supp. 621 (D.V.I.1973).

In conformity with these precedents, since all of Plaintiff's tort-based claims were time-barred as of August 1990, and since Plaintiff did not achieve compliance with the statute until two years later, all of Plaintiff's tort-based claims must be dismissed.

As a practical matter, this means that Plaintiff will be permitted to proceed with its claims for damages,—including, if the evidence at trial suffices to warrant it—consequential damages; but Plaintiff's claims for damages for emotional distress, wrongful interference with business relationships, and punitive damages, cannot proceed.

### ORDER

**AND NOW,** this 16th day of September, 1992, upon consideration of Defendant's Motion for Partial Summary Judgment, and Defendant's Motion to Dismiss, and Plaintiff's Responses, it is **ORDERED:**

1. Counts II, III, and IV of Plaintiff's Complaint are **DISMISSED WITH PREJUDICE.**

2. Defendant's Motion to Dismiss pursuant to Fed. Rules of Proc. 37, as a sanction for alleged discovery violations, is **DENIED.**

March 3, 1993

### MEMORANDUM AND ORDER

FULLAM, Senior District Judge.

Plaintiff's Complaint asserts four categories of claim:

Count I, Negligence;

Count II, Breach of Contract;

Count III, Intentional Interference with contractual relationships;

Count IV, Punitive Damages (which can also be viewed as including damages for intentional infliction of emotional distress).

The Defendant filed two related motions:

(1) A motion to dismiss all of Plaintiff's claims except those for breach of contract (Count II), on the ground that they were barred by the statute of limitations; and

(2) A motion for partial summary judgment, seeking dismissal of all except the negligence and contract claims (Counts I and II) on the ground that they lack evidentiary support.

By Memorandum and Order dated September 16, 1992, I granted Defendant's motion to dismiss on limitations grounds, and therefore found it unnecessary to consider the merits. Thus, at that point, all of Plaintiff's claims except the breach of contract claims asserted in Count II were dismissed.

Plaintiff then filed a document entitled "Motion to Modify" which, in effect, requests reconsideration of the September 16, 1992 ruling. Defendant responded by opposing the motion, and also by requesting the Court to enter a formal ruling on its Motion for Partial Summary Judgment addressing the merits of Plaintiff's claims.

Although the time within which a motion for reconsideration could have been filed had expired before Plaintiff filed its "Motion to Modify" it is appropriate to address the issues again, in view of the fact that the Defendant also seeks further clarification, and no final, appealable, order has been entered. As noted in my September 16, 1992 Memorandum, a Virgin Islands Statute, Tit. 13 V.I.C. § 533, provides:

"No corporation may commence or maintain any action in any court if it has not paid its annual franchise tax last due."

It is undisputed that the Plaintiff had not paid its annual franchise tax for several years, and had not done so at the time the suit was filed. It is also undisputed that, by the time Plaintiff did pay its franchise taxes and regained its standing to sue, the statute

of limitations had expired on all tort-based claims; only the breach of contract claims were then timely. Citing *Keith Enterprises, Inc. v. Centurion Corporation,* 9 V.I. 206 (D.V.I.1973), I ruled that the statute of limitations was not tolled by the initial filing of suit in this case, because Plaintiff then lacked the capacity to sue; and that compliance with the franchise tax statute after the statute of limitations period had expired did not revive the action. Plaintiff now argues that Section 533 does not apply to tort actions, because, if applied to tort actions, the statute would be unconstitutional.

It is true that, in one case, a Judge of this court so ruled, *see Cirino v. Hess Oil V.I. Corp.,* 9 V.I. 518, 384 F.Supp. 621 (1973). I have studied the *Cirino* opinion carefully, but remain unpersuaded that it is correct. The language of the statute is plain. I perceive no violation of a constitutional right in a statute which precludes a corporation from access to judicial proceedings until its legitimate existence is established, by compliance with patently reasonable franchise-tax obligations. Moreover, I fail to see any conceivable basis for treating tort claims differently from contract claims in this context; since the *Cirino* Court conceded that the statute was valid as applied to contract claims, its ruling with respect to tort claims is indeed suspect. Finally, the *Cirino* decision is squarely inconsistent with the decision of another Judge of this court in *Keith Enterprises, Inc. v. Centurion, supra.* The Motion to Modify will be denied.

Although this ruling disposes of all of the claims which are the subject of Defendant's Motion for Partial Summary Judgment, since Defendant seeks an alternative ruling on that Motion, I shall proceed to oblige. In my view, if Plaintiff's tort-based claims were not time-barred, they would survive summary judgment. The facts set forth in Plaintiff's affidavits might well persuade a jury the Defendant had interfered with contractual relationships, and had acted with sufficient disregard of Plaintiff's rights to warrant punitive damages. An order follows.

### *ORDER*

**AND NOW,** this 3rd day of March, 1993, it is **ORDERED:**

1. Plaintiff's Motion to Modify is **DE-NIED.**

2. All of Plaintiff's claims except those for breach of contract are **DISMISSED, WITH PREJUDICE.**

3. Defendant's Motion for Partial Summary Judgment is **DENIED.**