# IN RE PETER NAJAWICZ, AMOS W. CARTY, JR., and RODNEY E. MILLER, SR.

Criminal Misc. No. ST-08-ML-3

Superior Court of the Virgin Islands

Division of St. Thomas and St. John

September 23, 2008

105

DENISE GEORGE-COUNTS, ESQ., CLAUDE E. WALKER, ESQ., Assistant Attorneys General, Department of Justice, St. Thomas, USVI, *Counsel for the People*.

MICHAEL FITZSIMMBNS, ESQ., Stryker Duensing Casner & Dollison, St. Thomas, USVI, *Counsel for Peter Najawicz*.

HENRY L. FEUERZEIG, ESQ., MICHAEL C. QUINN, ESQ., Dudley, Topper & Feuerzeig, LLP, St. Thomas, USVI, *Counsel for Amos W. Carty, Jr.*

WILLIAM J. GLOWE, ESQ., Dudley, Clark & Chan, LLP, St. Thomas, USVI, *Counsel for Rodney E. Miller, Sr.*

CARROLL III, *Judge*

## MEMORANDUM OPINION AND ORDER

(September 23, 2008)

THIS MATTER came on for hearing before this Court on August 22, 2008 on the Motions of Peter Najawicz ("Najawicz") and Rodney E. Miller, Sr. ("Miller") to vacate a temporary restraining order on identified assets of the Movants that was issued by the Court on August 5, 2008 an *ex parte* Petition filed pursuant to the Criminally Influenced and Corrupt Organizations Act ("CICO"). V.I. CODE ANN. tit. 14, § 606(h) (1996). On August 5, 2008, in addition to restraining certain assets of Najawicz and Miller, the Court also restrained assets of Amos W. Carty, Jr. ("Carty") under the provisions of Section 606(h).

Carty was not present at the August 22, 2008 hearing, but was represented by his counsel, Michael Quinn Esq., of Dudley, Topper & Feuerzeig, who, although present, did not participate in the hearing because his client and the People agreed to a stipulation regarding the assets available to him.[1] Najawicz was not present, but was represented by counsel, Michael Fitzsimmons, Esq., of Stryker, Duensing, Casner & Dollison. Miller was present and represented by William Glore, Esq., of Dudley, Clark & Chan The People were represented by Assistant Attorneys General Denise George-Counts, Esq., Claude Walker, Esq., and Esther Walters, Esq.

---

[1] On August 18, 2008, the Court gave the People and the targets of the temporary restraining order an opportunity to reach an agreement about the scope of the temporary restraining order. After an out-of-court discussion, the People and Carty entered into a stipulation modifying the temporary restraining order. On August 22, 2008, the Court ordered that the temporary restraining order be modified in accordance with the stipulation of Carty and the People, which allowed Carty to withdraw Two Thousand Eight Hundred Fifty-One Dollars and Ninety-One Cents ($2,851.91) from a Banco Popular account in the name of AMAX Management Services, Inc., left the remaining balance in that account subject to the August 5 temporary restraining order, and allowed Carty to resume use of a Banco Popular account held jointly in the names of Carty and Vema Tumbull-Carty, his wife. In light of the stipulation settling the Carty motion, all that is now before the Court are the motions of Najawicz and Miller.

After considering all arguments made by parties, both written and oral, this Court will deny Najawicz's and Miller's motions to vacate the *ex parte* temporary restraining order issued on August 5, 2008, against their assets.

## BACKGROUND

On August 5, 2008, the People sought an *ex parte* temporary restraining order ("TRO") against the assets of Carty, Najawicz and Miller. The TRO was issued and placed under seal, along with the affidavit upon which it was based. On August 11, 2008, Najawicz requested a hearing regarding the TRO. On August 12, 2008, this Court scheduled a hearing for August 18, 2008. On August 14, 2008, Carty requested a hearing regarding the TRO for the same day as Najawicz or earlier. On August 15, 2008, this Court scheduled a hearing for Carty for the same time as Najawicz's hearing. On August 18, 2008, Miller's attorney entered his appearance, although Miller himself was not present for the hearing.

As further detailed in Footnote number 1 above, the People and Carty entered into a stipulation regarding his assets frozen by the TRO. Najawicz's and Miller's hearing was until August 22, 2008, with all motions and memoranda of law due by August 2008.

## DISCUSSION

### A. Applicable Statute

Miller and Najawicz urge that the Court apply V.I. CODE ANN. tit. 14, § 606(g) (1996) in determining whether or not to vacate the TRO. However, the People sought the *ex parte* issuance of a temporary restraining order based on Section 606(h), a provision of CICO, which provides that:

> Upon application by the Attorney General . . . , a temporary restraining order to preserve the reachability of property subject to criminal forfeiture under this section of this chapter shall be granted without the requirement of notice to any party if: (1) . . . the appropriate court of competent jurisdiction determines that there is probable cause to believe that property with respect to which the order sought would, in the event of a conviction, be subject to criminal forfeiture under this section; (2) the property is in the possession or control of the party against

whom the order is to be entered; and (3) the Superior Court . . . determines that the nature of the property is such that it can be disposed of or placed beyond its jurisdiction before any party may be heard in opposition.

V.I. CODE ANN. tit. 14, § 606(h).

■ The Court disagrees with Miller and Najawicz and finds that § 606(g) does not apply in the present matter. Considering the CICO statute as a whole, general principles of statutory interpretation require that § 606(g) should be properly read in conjunction with V.I. CODE ANN. tit. 14, § 606(f) rather than § 606(h).[2] Both § 606(f) and § 606(g) contemplate a situation where the party whose assets are to be restrained is provided a hearing **prior** to the issuance of the temporary restraining order. Section 606(h) however, applies in cases, such as the present one, where a TRO is issued before the party is notified, because notice would jeopardize the reachability of the specific assets.

■ Moreover, the TRO governed by § 606(g) may remain in effect for up to ninety (90) days, unless it is further extended for good cause shown

---

[2] V.I. CODE ANN. tit. 14, § 606(f) and (g) provide:

(f) **Upon the filing of an information,** the trial court, **after a hearing** with respect to which any person who will be affected, and who is known to the prosecuting authority filing the information, has been given reasonable **notice and opportunity to participate,** but at which the usual rules of evidence shall not apply, may, based on the information:

(1) enter a restraining order or injunction;

(2) require the execution of a performance bond, except that the Government of the Virgin Islands shall under no circumstances be required to execute any such bond; or

(3) take any other action including, but not limited to, the appointment of a receiver, that the Attorney General or United States Attorney shows by a preponderance of the evidence is necessary to preserve the reachability of property alleged to be subject to criminal forfeiture.

(g) **If no information has been filed,** the Attorney General or United States Attorney, in addition to the showing otherwise specified by this section, shall similarly show that:

(1) there is probable cause to believe that the property with respect to which the order is sought would, in the event of a conviction, be subject to criminal forfeiture under this section: and that

(2) the requested order would not result in substantial and irreparable harm or injury to the party against whom the order is to be entered that outweighs the need to preserve the reachability of the property.

**No order so entered shall be effective for more than 90 days** unless it is extended by the Court for good cause shown or unless an information is filed alleging that the property is subject to forfeiture.

109

or an information is filed. The TRO obtained by the People under § 606(h) expires after sixty (60) days, though it may be extended by consent of the targeted party or for good cause shown. The disparity between the life of the TRO in § 606(g) and § 606(h) further clarifies that § 606(g) should not to read in conjunction with § 606(h).

With respect to the present TRO, Movants have made no hardship arguments, and we therefore do not reach the question of whether issuance of the TRO has caused a hardship to Miller or Najawicz. Notably, section 606(h) neither requires that the People demonstrate that the order would not cause a hardship to those targeted by it, nor does that section provide for the vacating of the TRO upon a showing of hardship by the targeted parties. However, § 606(g)(2), does require that the People "show that . . . the requested order would not result in substantial and irreparable harm or injury to the party against whom the order is to be entered that outweighs the need to preserve the reachability of the property."

█ Because the People proceeded under the provision of CICO that allows for the issuance of a TRO without prior notice to the targeted parties, § 606(h) is the applicable statute.

### B. Due Process

Miller contends that the actions of the People pursuant to the CICO statute violate the due process clause.[3] The Court disagrees with Miller's argument.

█ █ The Supreme Court has long held that "the fundamental requirement of due process is the opportunity to be heard 'at a meaningful and in a meaningful manner.' " *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S. Ct. 1187, 14 L. Ed. 2d 62 (1965)). "In limited circumstances, immediate seizure of a property interest, without an opportunity for prior hearing, is constitutionally permissible." *Calero-*

---

[3] The Due Process Clause of the Fifth Amendment, which provides that "no person shall . . . be deprived of life, liberty or property without due process of law," U.S. CONST. amend. V is specifically incorporated the Revised Organic Act of 1954 of the Virgin Islands which states that "no law shall be enacted in the Virgin Islands which shall deprive any person of life, liberty or property without due process of law." 48 U.S.C. § 1561.

*Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 678, 94 S. Ct. 2080, 40 L. Ed. 2d 452 (1974). The limited circumstances are those in which

> the seizure has been directly necessary to secure an important governmental or general public interest . . . ; there has been a special need for very prompt action . . . ; and the State has kept strict control over its monopoly of legitimate force [because] the person initiating the seizure has been a government official responsible for determining, under the standards of a narrowly drawn statute, that it was necessary and justified in the particular instance.

*Id.* quoting *Fuentes v. Shevin*, 407 U.S. 67, 91, 92 S. Ct. 1983, 32 L. Ed. 2d 556 (1972).

■ CICO's provision allowing for the *ex parte* issuance of a TRO satisfies due process requirements by providing that "[i]f a temporary restraining order is granted under this section without notice to any party, a hearing concerning the entry of an order under this section shall be held at the earliest practicable time and prior to the expiration of the temporary order." V.I. CODE ANN. tit. 14, § 606(h).

Here, the TRO was issued on August 5, 2008. The first party to request a hearing did so on August 11, 2008. This request was granted on the following day and the hearing was set for August 18, 2008. The August 18 hearing was continued to August 22, 2008, in order to give Miller, whose assets had been frozen but who had not yet moved for a hearing, an opportunity to file the proper papers and to be present for the process proceedings.[4] In spite of the delays caused by Miller's absence, the hearing still took place only seventeen calendar days after the TRO was issued. To argue that seventeen days is outside the bounds of a reasonable timeframe within which to have a hearing on a TRO that expires after sixty days is an overstatement at best. Furthermore, the elapsed time would have been even shorter were it not for the delays caused by the very Movant who has presented this issue before this Court.

---

[4] The proceedings in Miller's case were further delayed because Miller was outside of the jurisdiction and his attorney had to arrange for Miller's surrender and release on bail on another criminal charge in the Virgin Islands. Although Miller has submitted arguments to this Court with respect to the timeliness and merits of this separate we do not reach those questions because the criminal charge is entirely unrelated to the TRO.

111

■ The various cases cited by Miller, referring to a hearing within ten days of the issuance of a TRO under the federal Racketeering Influenced & Corrupt Organizations Act ("RICO") 18 U.S.C. §§ 1961-1968, are geared towards a TRO that only lasts for ten days. Plainly stated, a hearing after seventeen days is comfortably within the bounds of reasonableness contemplated by CICO.

Holding the hearing after the issuance of the TRO is justified by the principles expressed by the United States Supreme Court. Section 606(h) allows the People to assert *in personam* jurisdiction over the targeted parties — and, by extension, real and personal property under their control — thereby promoting the public interest in preventing the continued use of the allegedly illegally obtained funds and the real and personal property derived those funds. *Calero-Toledo*, 416 U.S. at 679. Notice and a hearing before the issuance of the TRO would have frustrated the interests served by the statute since many of the items restrained are "of a sort that could be removed to another jurisdiction, destroyed, or concealed, if advance warning" were given. *Id.* Finally, the request for restraint here was "not initiated by self-interested private parties," but rather by the Attorney General's Office after having determined that restraint of the property was necessary and appropriate under the provisions of CICO to protect the public interest. *Id.*

This is precisely the type of circumstance that the Supreme Court considered sufficiently "extraordinary" as to warrant the postponement of notice and hearing until after the issuance of the temporary restraining order. The prompt notice and hearing that took place after the TRO was issued ensure that the Movants were not denied due process.

### C. Probable Cause and Particularity of the Affidavit

Both Miller and Najawicz argue that the restraining orders were issued without 2 sufficient showing of probable cause by the People. The Court disagrees, and finds that the People have shown sufficient probable cause for the restraint of the assets of the movants.

■ CICO requires the determination "that there is probable cause to believe that property with respect to which the order [is] sought would, in the event of a conviction, be subject to criminal forfeiture under this section." V.I. CODE. ANN. tit. 14, § 606(h). When a statute is plain on its face, a court need not resort to its legislative history to decipher its

meaning. *In re Assets of Martin*, 1 F.3d 1351, 1359 (3rd Cir. 1993). While the issue of probable cause as it relates to temporary restraining orders under CICO is a novel issue, courts have held that "probable cause for the purpose of forfeiture proceedings is the same standard used in search and seizure cases" requiring a " 'practical, common-sense decision whether, given all the circumstances set forth . . . there is a fair probability' that a crime has been committed or that property is subject to forfeiture." *United States v. Thomas*, 913 F.2d 1111, 1114 (4th Cir. 1990) (quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983)). Accordingly, given the plain language of the statute, it is appropriate to consider both whether there is probable cause that a crime has been committed as well as whether there is probable cause that the restrained real and personal property is subject to forfeiture in the event of a conviction.

█ The People have met this burden through the affidavit of Special Investigator Nicholas Peru ("Peru"). According to the Peru affidavit, the Movants authorized, received or approved the transfer of funds from the Roy Lester Schneider Hospital ("RLSH") account to each other without following basic standard operating procedures and accounting principles and without the RLSH board's authorization. (Peru Aff. ¶¶ 4 and 6.) Moreover, the affidavit alleges that the Movants acquired a number of real and personal properties during the period when they were receiving these funds. (Peru Aff. ¶¶ 9 and 20.)

During the hearing, the People argued to the Court's satisfaction that Peru's affidavit meets the probable cause requirement laid out in § 606(h). The affidavit adequately lays out probable cause for the predicate offense(s) enumerated in V.I. CODE ANN., tit. 14, § 606(e) required to establish the "pattern of criminal activity" contemplated in V.I. CODE ANN. tit. 14, § 605. Through the Peru affidavit, the People have further established sufficient probable cause that the property sought to be restrained by the TRO was derived from or realized through conduct in violation of the provisions of CICO. Because the People have met the standard of showing probable cause to believe that Movants committed one or more of the predicate offenses listed in CICO, it follows that the restrained real and personal properties, which were likely obtained with the illicit funds gained from the commission of the alleged offenses, would be subject to forfeiture in the event of a conviction. Therefore, the People have met the probable cause burden imposed by section 606(h).

### D. Jurisdiction and Extraterritorial Application of the TRO

 Miller questions the extraterritorial application of the temporary restraining order issued under CICO. In resolving the question of CICO's extraterritorial application, this Court refers to cases under RICO, because "CICO is cast in the mold of the federal RICO statute." *Charleswell v. Chase Manhattan Bank, N.A.*, 45 V.I. 495, 308 F. Supp. 2d 545, 562 (D.V.I. 2004) (quoting *Pemberton Sales Service, Inc. v. Banco Popular de Puerto Rico*, 877 F. Supp. 961, 970 (D.V.I. 1994)). Several federal circuit courts of appeals have held that "because RICO forfeiture is an *in personam* action, rather than an *in rem* action, . . . the government's interest in the forfeitable property vests at the time of the activity." *United States v. Angiulo*, 897 F.2d 1169, 1210 (1st Cir. 1990). *See United States v. Ginsburg*, 773 F.2d 798, 801 (7th Cir. 1985) (asserting, with respect to RICO forfeiture, that the government's interest in profits or proceeds of racketeering activity vests at the time of the violating act and cannot subsequently be defeated by defendant's dissipation or transfer of the proceeds; and also noting the amendment giving the government the ability to obtain restraining orders to prevent the transfer or dissipation of profits and proceeds before trial); *see also United States v. Robilotto*, 828 F.2d 940. 948-49 (2d Cir. 1987) (finding that RICO forfeiture, unlike forfeiture under other statutes, is imposed directly on the individual rather than against the property itself).

 The temporary restraining order issued on August 5, 2008, was an *in personam*, rather than an *in rem* restraint. The language of the makes this clear ordering that

> neither the owner(s) of record nor any other person or entity may sell, lease, mortgage, alienate, transfer, encumber, dispose of or conduct any real estate transaction involving any real property . . . and . . . neither the owner(s) of record nor any other person, or entity, may alienate, transfer, conceal, encumber, or dispose of any personal property stated herein, including but not limited to any monetary instrument, fund, obligation, or credit, during the duration of this order.

(TRO 6,) Furthermore, any arguments regarding the Court's jurisdiction over the Movants are now moot because they have subjected themselves to this Court's jurisdiction.

Because the Movants are subject to this Court's jurisdiction, the *in personam* restraint of the TRO can work to prevent them from engaging

in certain conduct as it relates to the real and personal properties of interest in this matter.

## CONCLUSION

The People properly moved under § 606(h) for a pre-indictment, *ex parte* TRO to preserve the reachability of certain assets obtained by Movants with funds allegedly obtained through unlawful activity. Section 606(h)'s provision for a no-notice, *ex parte* TRO is neither unconstitutional; nor does its application in this case violate the due process rights of the Movants, who were provided with timely notice and an opportunity to be heard. The People have met the probable cause burden necessary to issue and subsequently uphold the TRO. Finally, the TRO established *in personam* restraints over the Movants and their conduct with respect to the properties and funds, rather than *in rem* restraints over the properties and funds. The Movants having failed to provide satisfactory justification as to why the TRO should be vacated, their Motions will be denied.

Accordingly, it is

**ORDERED** that Peter Najawicz's and Rodney E. Miller, Sr.'s Motions to Vacate the Temporary Restraining Order are **DENIED**.